ART HILL FORD, INC., Appellant
(Defendant below),

v.

Kenneth CALLENDER and Jeannette
Callender, Appellees
(Plaintiffs below).

No. 3–879A217.

Supreme Court of Indiana.

July 24, 1981.

Joel C. Levy, Gregory R. Lyman, Single-ton, Levy & Crist, Highland, for appellant.

William J. Cunningham, Robert M. Schwerd, Smith, Hilbrich, Cunningham & Schwerd, Highland, for appellees.

HUNTER, Justice.

This case is before this Court upon the petition to transfer of plaintiffs-appellees, Kenneth and Jeannette Callender. The Callenders prevailed at trial when the jury returned a verdict against the defendants Art Hill Ford, Inc. and Ford Motor Company on a complaint alleging breach of warranty and negligence. Compensatory damages were assessed against both defendants and punitive damages were assessed against Art Hill Ford. The compensatory damage awards were satisfied but Art Hill Ford appealed the award of punitive damages. The Court of Appeals, Third District, reversed the award of punitive damages on the basis that the evidence was insufficient to sustain the award. *Art Hill Ford, Inc. v.*

*Callender,* (1980) Ind.App., 406 N.E.2d 340 (Staton, J., dissenting).

We now grant transfer and reverse. The opinion and decision of the Court of Appeals are hereby vacated, and plaintiffs' petition to transfer is granted. The judgment of the trial court is affirmed.

Since this case deals with the question of the sufficiency of the evidence on the issue of punitive damages, we first note the well-settled law concerning our standard of review. Our function is not to sit as a trial court, but rather to review and correct errors of law and to accept the facts as they are presented so long as probative evidence supports them. *Melloh v. Gladis,* (1974) 261 Ind. 647, 309 N.E.2d 433. The reviewing court does not reweigh the evidence nor determine the credibility of witnesses, but will sustain a verdict if there is evidence of probative value to support it. Where there is a conflict in the evidence, the trier of fact in the court below must resolve that conflict. *Brand v. Monumental Life Insurance Co.,* (1981) Ind., 417 N.E.2d 297.

■ Next, we consider the law governing the question of punitive damages in a contract action. This Court has clearly stated that while punitive damages are not generally recoverable in contract actions, there are certain exceptions to this rule. Where the conduct of a party, in breaching his contract, independently establishes the elements of a common law tort, punitive damages may be awarded for the tort. *F. D. Borkholder Co., Inc. v. Sandock,* (1980) Ind., 413 N.E.2d 567; *Hibschman Pontiac v. Batchelor,* (1977) 266 Ind. 310, 362 N.E.2d 845; *Vernon Fire & Casualty Ins. Co. v. Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173. Punitive damages may be awarded in addition to compensatory damages whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of the punitive damages. *Hibschman Pontiac v. Batchelor, supra; Vernon Fire & Casualty Ins. Co. v. Sharp, supra.*

The jury in this case awarded compensatory damages against Art Hill Ford in the amount of $2,411 and punitive damages in the amount of $7,000. They awarded compensatory damages against Ford Motor Company in the amount of $4,822; after a remittitur, judgment was entered against Ford Motor Company for $2,411. From the evidence in this case, the jury could have found separate tortious conduct which mingled with the breach and entitled plaintiffs to the punitive damage award.

■ The evidence from the record most favorable to the verdict was succinctly stated by the Court of Appeals:

"Kenneth Callender purchased a 1976 Ford four-wheel drive pickup truck designed for off-road use from Art Hill Ford on April 20, 1976. Two days later, while driving off the road, the front axle broke. Due to the nature of the damage, Art Hill Ford had the vehicle inspected by a Ford Motor Company representative so that repair could be authorized under the warranty before work began. The representative inspected the truck and authorized the repair in the last week of April. After the work was authorized, the Callenders were told that the parts had to be ordered and would take 10 days to two weeks to arrive. In Mid-May, Kenneth contacted Art Hill Ford and was told that the parts had not arrived and were on back order. Art Hill Ford was contacted on a regular basis thereafter and each time the Callenders were told that the parts were still on back order. Kenneth was told on several occasions that the truck would be ready the 'next week.' At the end of May, Mrs. Callender was told that the truck would definitely be repaired by the Fourth of July holiday weekend. On July 2, Kenneth was permitted to take the truck although the repair to the front axle was not yet completed since a part had not come in. Because the truck was not completely repaired, some restrictions were imposed on the use of the truck.

"Art Hill Ford blamed the delay in fixing the truck on the difficulty in obtaining the necessary parts. The parts manager testified that the part was not in stock in

any Ford parts depot in the United States and that a front axle was not a part that a dealer would normally have in stock. Further compounding the difficulty was the fact that the incident occurred just prior to a new model year. The parts manager testified that he made numerous calls to Ford and other dealers around the country in order to locate the necessary parts." *Art Hill Ford, Inc. v. Callender, supra,* at 341–342.

As Judge Staton pointed out in his dissent, the evidence also shows that at one point before July 2, Callender's mother contacted the Ford dealer representative in Melrose Park, Illinois, regarding the necessary parts. The representative ran a computer check of inventory at Ford warehouses, finally located the parts, and had them shipped to Art Hill Ford. Even though the axle was fixed by July 2, Callender's problems with the truck were not over:

"Over the Fourth of July holiday, the Callenders went on a trip to Benton Harbour, Michigan in the truck. On the way, Kenneth noticed a strange noise he later determined to be a problem with the transfer case. He returned the truck to Art Hill Ford on July 19th and was told that the truck would be repaired.

"Kenneth, who had training in automotive repair, testified that the transfer case should have been inspected and repaired when the front axle was repaired. He stated that when the front housing of the axle breaks, the drive shaft will go back up in the transfer case causing damage. Art Hill Ford admittedly did not inspect or repair the transfer case when the axle was repaired. The testimony of Ford Motor Company witnesses, who also were qualified as experts, was that if the axle had broken under the circumstances as described by Kenneth, the transfer case would not have been damaged and there would be no reason to inspect it.

"Repairs to the transfer case were not completed until October 18, 1976. Again the necessary parts were not normally kept in stock by a dealer. Nor were the parts available from any Ford parts depot in the United States. The parts manager

at Art Hill Ford again had to call Ford Motor Company and other dealers several times attempting to obtain the various parts. Besides the difficulties encountered because of the change in the model year, further problems arose in September because of a strike at Ford Motor Company during which no parts could be delivered.

"Mrs. Callender contacted the Ford Motor Company's customer service department located in Melrose Park, Illinois. This department was also unable to obtain the necessary parts to repair the truck. Eventually the major part necessary for repair was obtained by Melrose Park from a dealer in Oklahoma. After this part was delivered, Mrs. Callender was told by Art Hill Ford that the truck would be ready on September 24. However, Art Hill Ford subsequently discovered that additional parts were needed to complete the repair. These parts also had to be ordered causing an additional delay." *Art Hill Ford, Inc. v. Callender, supra,* at 342.

There was also testimony about a verbal dispute between the Callenders and Art Hill Ford's general manager. In August, Kenneth took his mother's car in for repairs. At this time, there was an angry discussion about the repairs on his mother's car and at one point during the discussion, the manager raised his fist at Kenneth and said he "had caused enough trouble." While there was testimony that this incident was wholly unrelated to the truck problems, the nature of the general manager's remarks to the Callenders clearly suggests that this incident was part of the continuing difficulties between the parties.

Whenever Callender called the dealership in regard to his truck, he was often placed on hold for long periods of time and then was told either that the parts were not available or that the truck would be ready in a week. Finally, on October 15, 1976, the Callenders initiated this lawsuit. Art Hill Ford telephoned Mrs. Callender on October 18, 1976, and told her that the truck was fully repaired and was ready to be picked

up at any time. While there was some testimony at trial that the long delays in the repair were caused by a shortage of available parts, one expert witness from Ford Motor Company's Marketing Division in Dearborn, Michigan, testified that he knew of no such shortage during the relevant periods of time.

From this evidence, the jury could reasonably infer that there was not only a breach of warranty of prompt service but also that elements of misrepresentation, fraud, gross negligence or oppression mingled into the breach of warranty. The period of six months used by Art Hill Ford to complete the repairs on the truck was greater than a "reasonable" delay for repairs on a new vehicle. Callender was repeatedly informed that the needed parts were not available when a witness from Ford Motor Company testified that he knew of no shortage of parts during that period of time. Callender's inquiries concerning the status of repairs were usually ignored or brushed off with meaningless excuses. There was evidence that the general manager of Art Hill Ford accused Callender of causing a lot of trouble. There was conflicting evidence about the possible negligent failure of Art Hill Ford to check the transfer case when the truck was first brought in with the broken axle. Finally, there was evidence that Art Hill Ford did not make a sincere effort to obtain the needed parts, since the truck was repaired quickly after Mrs. Callender's call to the Ford dealer customer service representative the first time and within three days of the filing of the lawsuit the second time.

We believe that there is cogent and convincing proof that Art Hill Ford engaged in intentional wrongful acts constituting misrepresentation, fraud, gross negligence and oppressive conduct in its dealings with the Callenders. There was sufficient evidence to support the jury's award of punitive damages and we will not disturb that verdict on appeal. *F. D. Borkholder Co., Inc. v. Sandock, supra; Hibschman Pontiac, Inc. v. Batchelor, supra.*

Transfer is granted, the decision of the Court of Appeals is vacated, and the judgment of the trial court in all respects should be affirmed.

Judgment affirmed.

GIVAN, C. J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

On April 22, 1976, the front axle of Callender's new four-wheel drive pickup truck broke under use. Repairs of the truck were completed in October, 1976. Repairs of the axle were completed by July when Callender took the truck into his possession and successfully drove it into Michigan for a two week long vacation. These repairs proved insufficient, as a transfer case was then identified as being the source of additional problems. Much of the delay of the car agency in getting the whole job completed stemmed in point of fact from the difficulty in getting parts from Ford throughout the repair process. However, some of the delay of the car agency was occasioned by its desire to get warranty authorization from Ford before making actual repairs, even though Ford did not require such authorization. Delay in making repairs on this latter basis supports the breach of contract determination and award of compensatory damages but, like the Court of Appeals, I find nothing in this conduct which supports an award of punitive damages for a serious tortious wrong.

The award of compensatory damages should be affirmed and the award of punitive damages set aside.

PRENTICE, J., concurs.