**D & T SANITATION, INC., Appellant (Plaintiff Below),**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee (Defendant Below).**

No. 3–881A202.

Court of Appeals of Indiana, Third District.

Jan. 11, 1983.
Rehearing Denied Feb. 18, 1983.

Jerrald A. Crowell, Bowman, Crowell & Teeters, Fort Wayne, for appellant.

John F. Lyons, James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, for appellee.

HOFFMAN, Presiding Judge.

D & T Sanitation, Inc. (D & T), is an Indiana corporation which engages in the business of garbage collection and disposal. In conducting such business, D & T owned and operated a 1974 Ford truck and a Heil trash packer. This equipment had a fair market value of $35,000 prior to being extensively damaged by fire on September 1, 1978. Notice of claim was duly filed with D & T's insurer, State Farm Mutual Automobile Insurance Company (State Farm).

Prior to the next business day after the fire, D & T was able to obtain a substitute truck-packer unit. This acquisition enabled D & T to meet all of its customer service obligations. Accordingly, the company lost neither customers nor profits as a consequence of the fire.

Despite D & T's belief that the truck-packer unit was a total loss, the company was assured by State Farm and its independent appraisers that the equipment could be fully restored for considerably less than the full value thereof. State Farm thus elected to repair rather than replace the damaged unit. However, evidence presented at trial revealed that no visible repairs had been made by March 1979. State Farm did advise on several occasions from September 1979 to April 1980 that the repairs were complete. In each instance, however, D & T found the repairs to be inadequate, particularly as they related to the hydraulic system. D & T subsequently brought suit for compensatory and exemplary damages.

The trial court found the unit to be a total loss and accordingly awarded D & T the fair market value prior to damage. In addition, the court awarded a pro-rated portion of the interest expense incurred by D & T in acquiring the replacement unit. D & T now appeals this assessment of damages as being inadequate. State Farm also claims that the trial court erred in refusing to entertain newly discovered evidence regarding the actual value of the unit.

The trial court entered a specific finding that D & T had suffered no loss of use damages since the company was able to immediately secure an adequate replacement unit. Appellant contends, however, that as a matter of law it is entitled to recover the reasonable rental value of the equipment during the period of repair. Such contention, however, has no merit.

Professor Dan B. Dobbs has commented that:

"Loss of use claims are most commonly asserted for a period of time when the chattel is being repaired, but sometimes the chattel is destroyed and is not repairable. In such cases, loss of use claims are sometimes asserted for the period required to replace the chattel. A number of courts have refused to permit loss of use awards in cases of total destruction, and have limited recovery in such cases to the value of the article. *Handbook of the Law of Remedies* (1973) § 5.11, p. 384.

The Restatement of Torts, § 927 reads:

" 'Where a person is entitled to a judgment for the conversion of a chattel or the destruction of any legally protected interest in land or other thing, the damages include

(a) the exchange value of the subject matter or the plaintiff's interest therein at the time and place of the conversion or

destruction, or a different value where that is necessary to give just compensation, and

(b) *The amount of any further loss suffered as the result of the deprivation,* and

(c) interest from the time at which the value is fixed or compensation for the loss of use.'" (Emphasis added.)

*New York Central R.R. Co. v. Churchill et al.* (1966), 140 Ind.App. 426, at 433, 218 N.E.2d 372, at 376.

Though numerous cases are cited in which loss of use damages were awarded where further loss was suffered as a result of such deprivation, appellant fails to enumerate what loss beyond the market value of the equipment was suffered in the instant case. In *New York Central R.R. Co. v. Churchill et al., supra,* 140 Ind.App. at 426, at 434, 218 N.E.2d 372, at 277, it was held that:

"... the lower court did not err in admitting the testimony which showed the loss of use in terms of the reasonable rental value of the tractor-trailer unit for the reasonable amount of time that it would have taken the appellees to replace said unit .... We would limit the recovery to a reasonable time necessary to replace the unit, i.e., such a party must mitigate the damages, more than this is beyond proximate causation."

Had D & T suffered any consequential damages, such as lost profits or customers, as a result of being deprived of the use of the damaged equipment, a valid claim for the damages sought would then be established.

Appellant argues that denying recovery for the rental value in effect penalizes it for immediately securing a replacement vehicle. The aim of compensatory damages, however, is not to penalize either party, rather it is to indemnify the injured party for the loss sustained. 9 I.L.E. *Damages* § 3 (1971). Appellant fulfilled its duty of mitigating the loss, and the trial court accordingly awarded damages intended to place D & T in the same position it occupied prior to the fire. To allow recovery beyond the injury actually suffered would provide a windfall in the nature of exemplary damages, for which appellant also makes claim.

Appellant contends that the trial court erred in denying punitive damages as a result of applying the wrong standard of conduct. A long line of Indiana cases has established that:

"... the general rule is punitive damages are not recoverable in contract actions. *Hibschman Pontiac, Inc. v. Batchelor,* (1977) 266 Ind. 310, 362 N.E.2d 845; *Vernon Fire & Casualty Ins. Co. v. Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173; *Harper v. Goodin,* (1980) Ind.App., 409 N.E.2d 1129; *Southern, School Buildings, Inc. v. Loew Electric Inc.,* (1980) Ind.App., 407 N.E.2d 240; [*First Federal Savings & Loan v.*] *Mudgett, supra* [(1979) Ind.App., 397 N.E.2d 1002]; *Standard Land Corporation of Indiana v. Bogardus,* (1972) 154 Ind.App. 283, 289 N.E.2d 803; *Murphy Auto Sales, Inc. v. Coomer,* (1953) 123 Ind.App. 709, 112 N.E.2d 589. However, where the breach also includes conduct (1) which independently establishes the elements of a common law tort such as fraud or (2) where elements of fraud, malice, gross negligence or oppression mingle in the controversy, Indiana courts will allow the imposition of punitive damages provided that the public interest is served by the deterrent effect of the punitive damages award. *Vernon Fire & Casualty Ins. Co., supra; Harper v. Goodin,* (1980) Ind.App., 409 N.E.2d 1129; *Art Hill Ford, Inc. v. Callender,* (1980) Ind.App., 406 N.E.2d 340; *Mudgett, supra; Jeffersonville Silgas, Inc. v. Wilson,* (1972) 154 Ind.App. 398, 290 N.E.2d 113."

*Hoosier Ins. Co., Inc. v. Mangino* (1981), Ind.App., 419 N.E.2d 978, at 981.

The trial court in the case at bar entered a specific finding which reads:

"In breaching its undertaking to repair, defendant may have erred in its selection of an appraiser and of the repairing garage. However, these failings, if they were failings, do not rise to the level of malicious or willful or obstreperous misconduct which would support punitive damages. Indeed, having elected to repair, defendant's representative made numerous and strenuous efforts to follow through. Punitive damages are denied."

It is apparent from this finding that the trial court did in fact apply the proper standard in the instant cause.[1] In *Amer. Family Mut. Ins. Co. v. Bentley* (1976), 170 Ind.App. 321, at 328–329, 352 N.E.2d 860, at 865, this Court noted that on appeal:

"We must accord the trial court due regard for its opportunity to evaluate the evidence and must uphold its findings unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A) and Appellate Rule 15(N). We will hold a trial court's findings to be clearly erroneous only where—although there is evidence to support them—a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Citizens Gas and Coke Utility v. Wells* (1971), 150 Ind.App. 78, 275 N.E.2d 323."

Appellant's contention merely invites this Court to reweigh the evidence, a practice in which it is well settled that this Court will not engage.

Appellant finally contends that the trial court erred in failing to award certain incidental expenses; specifically, $75 for towing charges, $50 for labor in unloading the trash compactor, and $440.62 for replacement tires.

The towing charges were paid by the appellant in order that the damaged vehicle might be moved to the repairman's garage. State Farm admitted liability for payment of this expense at trial, and the issue is thereby waived.

█ It was necessary to unload debris from the trash packer before undertaking its repair. Appellant was advised by State Farm's appraiser that $50 had been authorized for payment of labor expended in this cleaning process. D & T did in fact unload the packer, but presented no evidence at trial concerning the value of the labor expended. That damages must be proven with certainty is fundamental. The damage appraiser's report standing alone is not sufficient to entitle appellant to recover. Without direct evidence of the actual expense incurred, the trial court was correct in denying the claim.

█ The tires on the truck were totally destroyed by the fire. In order to tow this vehicle to a repair garage, it was therefore necessary to first replace its tires. The independent property damage appraiser estimated replacement cost at over $1,000. In fact, D & T was able to purchase new tires for $988.74. State Farm, however, reimbursed the company only $559.38, which it claimed was the estimated depreciated actual cash value of the tires prior to the fire. State Farm objects to paying the additional $429.36 by claiming that such payment would place D & T in a better position than it was in prior to the fire. However, this argument ignores the fact that the trial court's order placed ownership of the truck, including the new tires, in State Farm. Therefore, it is actually State Farm which will reap a windfall if it is not required to pay the full value of the tires it compelled D & T to purchase by electing to repair rather than replace the damaged vehicle. The trial court should have assessed this expense to State Farm.

█ Finally, the appellee, State Farm, contends that certain newly discovered evidence indicates that the damage award in this cause is excessive. A former employee of D & T contacted State Farm after the entry of judgment and informed it that the truck was not in good quality condition on the morning of the fire. In *Kelly v. Bunch* (1972), 153 Ind.App. 407, at 409, 287 N.E.2d 586, at 588–589, it was stated that:

"A motion for a new trial based on newly discovered evidence should be received with great caution and the alleged evidence should be carefully scrutinized. The newly discovered evidence must be material, and must be more than just cumulative or impeaching. The party seeking a new trial because of newly discovered evidence must show that the evidence is such that it could not have

---

1. In support of this conclusion see *The Travelers Indemnity Company v. Armstrong* Ind., 442 N.E.2d 349 (1982) in which it was held that an award of punitive damages requires proof by clear and convincing evidence. Under this strict standard it cannot be said as a matter of law that appellant was entitled to such damages.

been discovered before the trial by the exercise of due diligence, and must show that the evidence is such that it would reasonably and probably result in a different verdict. The granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court, whose decision will be disturbed only for a manifest abuse thereof." (Citations omitted.)

It has been further established that:

"One who seeks a new trial on the grounds of newly discovered evidence must set out facts establishing the use of due diligence." (Citations omitted.)

*Ligon Specialized Hauler, Inc. v. Hott* (1979), Ind.App., 384 N.E.2d 1071, at 1077. State Farm has wholly failed to set forth the reasonable diligence employed in attempting to ascertain the vehicle's condition prior to trial. In fact, had State Farm used the discovery procedures available, it could have easily obtained copies of the records of repair on the truck. Absent a showing of utilization of these discovery methods it would be totally inappropriate to reopen the record as urged by appellee.

The judgment of the trial court is accordingly affirmed in all matters, save the assessment of incidental expenses against State Farm for tires and towing. This cause is therefore remanded for judgment to be entered consistent with the holdings herein.

Affirmed in part and remanded in part.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

Where an insurance company has breached its contract with an insured by failing to recognize a valid claim, the standard to be applied to the conduct of the insurance company in its dealings with its insured is not the standard applied by the trial court and approved by Majority Opinion of this Court. I dissent.

The standard applied by the trial court was whether the conduct of the insurance company would ". . . rise . . . to the level of malicious or willful or obstreperous conduct which would support punitive damages." The correct standard set forth by our Indiana Supreme Court is that "Punitive damages may be awarded in addition to compensatory damages whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of the punitive damages." *Art Hill Ford, Inc. v. Callender* (1981), Ind., 423 N.E.2d 601, 602. *Also see,* Note, *Indiana's Allowance of Punitive Damages in Contract Actions Against Insurance Companies: How New is It?,* 55 Ind.L.J. 563 (1979–80).

The privilege of disputing liability in good faith is not available to State Farm. *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173. Finding 24 of the trial court negates good faith on the part of the insurance company. Here, the trial court states "the preponderance of the evidence indicates the unit was a total loss." Therefore, any efforts on the part of the insurance company to make repairs would have been in bad faith. At Finding 15, Mr. Barker, a wrecking service operator, described the truck as "junk". At Finding 16, Mr. O'Brien, a dealer in refuse handling equipment, described the truck as a "total loss." An insurance company dealing with the public is held to a higher standard than an uninformed layman when a determination must be made as to whether a piece of insured equipment *is a total loss* or *is repairable.* It is gross negligence for the insurance company to rely on uninformed agents where specialized equipment is being evaluated.

There were repeated misrepresentations to the insured, D & T Sanitation, Inc., by State Farm and its agents that the truck would soon be repaired and available for use. This amounts to oppressive conduct which clearly comes under the standard in *Art Hill Ford, Inc., supra.* There was the testimony of Mr. Jackson, an insurance representative, who stated that they could get the truck running in 30 days. (Tr. p. 358). Another witness, Mr. McGinnis, Division Mgr. for State Farm, wrote to the Indiana Department of Insurance that hopefully the repairs will be done in 3–4 weeks. This was

nine months after Mr. Jackson's assurance that the truck would be running in 30 days. (Tr. p. 375). When D & T Sanitation, Inc. was finally advised that the truck was ready in September 1979, the truck started to smoke profusely and had numerous other problems with its operation. The truck was obviously a total loss, a piece of junk. (Tr. 413–418). If ever there was a case where punitive damages would be in order, this case would more than qualify under the proper standard.[1] I dissent.

---

1. The Majority Opinion at Footnote 1 cites *The Travelers Indemnity Company v. Armstrong* Ind., 442 N.E.2d 349 (1982) in support of an evidentiary standard. However, the standard that has been incorrectly cited by the trial court is one of law not evidence. If the correct standard of law had been applied to the evidence, the trial court would have found the evidence more adequate to support the award of punitive damages. Furthermore, I do not see that the evidentiary standard has been radically changed by the *Travelers* case. In *Art Hill Ford, Inc. v. Callender* (1981), Ind., 423 N.E.2d 601, Justice Hunter had established a standard of "cogent and convincing proof." I do not see that "clear and convincing evidence"

is much different. The difference, if any, may be semantical at best.

It should be further noted that the *Travelers* case cited by the Majority can be easily distinguished. The Court noted and prefaced its remarks on punitive damages by stating:

"As hereinbefore related, the dispute between the parties arose over the monetary extent of the defendant's liability under the contract. Also, as hereinbefore determined, *the issue was one of law, not of fact, and the law* was unsettled in this state. It is, therefore, difficult to imagine circumstances more repugnant to an award of punitive damages." (My emphasis.).