**D & T SANITATION, INC., Appellant (Plaintiff below),**

v.

**INDIANA STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee (Defendant below).**

No. 3–881A202.

Supreme Court of Indiana.

Nov. 2, 1983.

Jerrald A. Crowell, Joseph W. Ruppert, Bowman, Crowell & Teeters, Fort Wayne, Robert G. Smith, Smith & Burry, Decatur, for appellant.

John F. Lyons, James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, for appellee.

HUNTER, Justice, dissenting to denial of transfer.

I respectfully dissent to the denial of plaintiff's petition to transfer from the Court of Appeals' decision in *D & T Sanitation v. State Farm Mut. Auto. Ins.,* (1983) Ind.App., 443 N.E.2d 1207. Plaintiff, D & T Sanitation (D & T) raises several issues in its petition, only one of which I believe merits consideration. That issue involves the standard to be applied in a claim for punitive damages in a breach of contract action. D & T contends here that the Court of Appeals erred in affirming the trial court's decision not to award punitive damages. It argues that the trial court based its decision on an improper standard for awarding punitive damages. I agree and therefore dissent to denial of plaintiff's petition to transfer.

D & T, an Indiana corporation, engages in the business of garbage collection and disposal. D & T owned and operated a 1974 Ford truck and Heil trash packer in the conduct of its business. This equipment had a fair market value of $35,000 prior to being extensively damaged by fire on Friday, September 1, 1978. At that time, D & T had an insurance policy with defendant, State Farm Mutual Automobile Insurance Company (State Farm), providing comprehensive coverage of D & T's truck-packer unit. Notice of claim was duly filed by D & T with State Farm.

On Monday, September 4, 1978, D & T's president, David Swygart, obtained an adequate substitute truck-packer unit pursuant to a lease with an option to purchase. In so doing, D & T was able to meet all of its customer service obligations and thus sustained no loss of business or profits and incurred no rental charges as a consequence of the fire.

State Farm elected to repair the unit rather than replace it or pay the actual cash value despite the belief of both D & T and other independent experts that the unit was a total loss. Mr. Phil Jackson, defendant's representative, told D & T that they could have the truck-packer unit running in thirty days. However, the record discloses that by March, 1979, *seven months later,* no visible repairs had been made to the unit although the delay resulted in part from the inability to obtain a proper replacement cab. In September, 1979, a year after the fire and notice of claim, State Farm finally advised D & T that the truck-packer unit was repaired and available for use. D & T's president, David Swygart, attempted to drive the unit from the garage and discovered numerous and severe problems with its operation.

D & T subsequently brought suit for compensatory and punitive damages. Here we are concerned only with the trial court's decision in regard to D & T's claim for punitive damages. As to that issue, the trial court denied punitive damages and it's decision was affirmed on appeal.

As Judge Staton points out in his dissent, *D & T Sanitation v. State Farm Mutual Auto. Ins. Co.,* (1983) Ind.App., 443 N.E.2d 1207, 1211 (Staton, J., dissenting), the trial court applied, and the Court of Appeals approved, an improper (or at best incomplete) standard to D & T's claim for punitive damages. The standard applied by the trial court was whether the conduct of the insurance company would "rise to the level of malicious or willful or obstreperous misconduct which would support punitive damages." Though this standard properly encompasses the requirement of a serious wrong, tortious in nature, it does not reflect the public interest factor expressed in *Vernon Fire & Casualty Ins. Co. v. Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173, and *Art Hill Ford, Inc. v. Callender,* (1981) Ind., 423 N.E.2d 601. The complete standard as set forth by this Court in *Art Hill Ford, Inc.,* 423 N.E.2d at 602, is that "Punitive damages may be awarded in addition to compensatory damages whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of the punitive damages." *Vernon Fire & Casualty Ins. Co.* and *Art Hill Ford, Inc.* demonstrate that Indiana law recognizes and protects a special public interest in preventing oppres-

sive breaches of certain private contracts where a service needed by a majority of the public is at stake. Though the particular conduct might not amount to a tort *per se,* the public has an interest in preventing comparable behavior in the future.

In the instant case, the trial court specifically found that "the preponderance of the evidence indicates the [truck-packer] unit was a total loss." Nevertheless, State Farm decided to repair the extensively damaged unit despite the opinions of various independent experts that the unit was not repairable. At trial court's finding number 16, Mr. O'Brien, a dealer in refuse handling equipment, described the truck as a "total loss." He had testified at trial that in his opinion the total dollar cost for repairing the truck would be in excess of $30,000. At finding number 15, Mr. Barker, a wrecking service operator, described the truck as "junk." In making its determination to repair, State Farm relied on an appraiser who had little, if any, expertise with the type of truck-packer unit involved. They also retained a "body shop" whose employees had no knowledge of hydraulics and no familiarity with the packer unit or the wiring from the truck to the packer. As Judge Staton notes in his dissent, it is simply gross negligence for State Farm to rely on uninformed agents where specialized equipment was involved.

Furthermore, State Farm made numerous misrepresentations to the insured, D & T, that the truck would soon be repaired and available for use. State Farm's representatives made the following statements at trial. First, Mr. Jackson, a field claim representative, stated at trial that he had told D & T in September, 1978, that the truck would be running in thirty days. However, the trial court found that no visible repairs had been made to the truck-packer unit during the *next seven months.* D & T subsequently complained to the Indiana Department of Insurance about its problems with State Farm. Mr. McGinnis, a State Farm division manager, responded to the Insurance Department's inquiries in a June 13, 1979 letter which stated that "hopefully" the repairs would be done in three to four weeks. State Farm did not talk with D & T until September, 1979, when they finally claimed the truck-packer unit was totally repaired and available for use. In attempting to operate the truck, D & T discovered smoke leaking in various parts of the cab and numerous other problems. *Nine months later,* a mechanic for a local trucking company, examined the unit and found the packer and ejector improperly operated at the same time; the tailgate was not operating properly; the ejector cylinder was blue from heat exposure; the hose showed evidence of fire damage; the motor mounts showed evidence of heat which might cause the motor to fall out; and finally, the carrier bearings showed fire exposure which might throw the crankshaft out. No further work was done to the unit from the spring of 1980 to the time of trial.

State Farm's conduct in its dealings with D & T constitutes not only a breach of contract, but also the elements of gross negligence, misrepresentation, and oppression mingle into the controversy. It would seem to me that to excuse repeated assertions that the truck would soon be repaired would be to encourage "unconscionable delay" and would in no way serve the public interest as a deterrent. Here, I believe evidence is clear and convincing and the public's interest in punitive damages should be recognized as a matter of law.

For all the foregoing reasons, I would grant transfer and vacate the Court of Appeals' opinion and judgment and also the trial court's judgment. I then would remand for a determination of an appropriate punitive damage award.

GIVAN, C.J., concurs.