The BANK OF NEW YORK and
Dreyfus Liquid Assets, Inc.,
Defendants-Appellants,

v.

Mildred BRIGHT, Plaintiff-Appellee.

No. 2–985A290.

Court of Appeals of Indiana,
Second District.

June 30, 1986.

M. Kent Newton, Kelly R. Norris, Tabbert & Capehart, Indianapolis, for defendants-appellants.

C. Wendell Martin, Robert L. Hartley, Jr., Martin, Wade, Hartley, Hollingsworth, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge, writing by designation.

## STATEMENT OF THE CASE

Appellants, The Bank of New York and Dreyfus Liquid Assets, Inc., appeal from a judgment entered by the Hamilton Circuit Court on a jury verdict in favor of Mildred Bright for $30,000. We affirm.

## FACTS

Mildred Bright opened an investment account with Dreyfus Liquid Assets in December, 1981. The Bank of New York, as transfer agent for Dreyfus Liquid Assets, had custody of and administered this account. By October, 1982, Mildred's account had a balance of $6,165.84.

Sometime near the end of September, 1982, the bank received instructions from a Mildred Bright of Solana Beach, California, to liquidate the account she held in the Dreyfus Mutual Fund. The signature on this order was guaranteed by the brokerage firm of Dean Witter Reynolds. The bank, however, liquidated the Dreyfus Liquid Assets account belonging to Mildred Bright of Indianapolis, Indiana. On October 4, 1982, the bank issued a check to Mildred Bright of Indianapolis, Indiana, for $6,185.84, but mailed it to Mildred Bright of Solana Beach, California, who promptly cashed it.

On February 7, 1983, Mildred Bright of Indianapolis, Indiana, received her quarterly dividend advice statement from Dreyfus Liquid Assets showing that her account had a zero balance. The following day Mildred's husband, Joe, called the toll free number printed on the advice to inquire about the status of her account. He was told that the bank had a research department to handle these problems and to call again in 24 to 48 hours. When Joe called on February 10, 1983, he was told the matter was being researched. At that time, he requested a copy of the liquidation transaction and was told one would be sent. Five days later Joe made his third call to the bank's toll free number and was informed that the matter was still being researched.

He once again requested a copy of the transaction and the bank assured him that one would be sent. On February 17, 1983, Joe made his fourth call to the bank. He was told the matter was in research, but was denied the opportunity to speak with anyone in the research department. The bank again promised that a copy of the questioned transaction would be forwarded. Joe contacted the bank again on February 23, 1983. He informed the operator that he was concerned because he was not receiving any cooperation from the bank and had not yet received a copy of the transaction. The bank promised that one would be sent. That same afternoon, the bank contacted Mildred. They claimed that she had received, signed, and cashed a disbursement check in California. Mildred in turn informed them that she had not been in California for fourteen years. She also requested that a copy of the check or transaction be sent to her and the bank indicated that they would do that. Joe called the bank for a sixth time on March 7, 1983. In response to his request for information, he was told, "Mr. Bright, that account is closed. Mrs. Bright got her money and the account is closed." Record at 736. The bank did promise, however, that the Brights would receive a copy of the disputed transaction. On March 9, 1983, Joe called the bank for the final time. He was again informed that Mildred's account had been liquidated. When he asked why a copy of the transaction had not been sent to him, he was told, "Well, Mr. Bright, this is a big organization and we're just awfully busy. And we can't do that." Record at 737. The Brights then decided to seek the assistance of an attorney. On March 14, 1983, their attorney mailed a letter to the bank notifying them that Mildred's account had been mistakenly liquidated. He also requested that the bank immediately issue a check to Mildred for the proper account balance. The bank never responded to this letter.

Mildred filed suit, in the Marion Superior Court, Civil Division, against The Bank of New York and Dreyfus Liquid Assets, Inc. on April 14, 1983, alleging that they had defrauded her of her investment and claiming total damages in excess of $1,000,000. Appellants failed to respond and, therefore, default judgment was entered against them. Mildred was awarded compensatory damages of $6,494.68 and $100,000 in punitive damages. Mildred's attorney mailed a copy of the default judgment to appellants on June 10, 1983. He received no response. On June 23, 1983, the attorney telephoned the bank to inquire about how they intended to satisfy the default judgment. Finally, on June 28, 1983, the bank mailed a letter to Mildred informing her that her account had been recredited on April 27, 1983.[1] On July 7, 1983, the default judgment was set aside.[2] The cause of action was subsequently venued to the Hamilton Circuit Court. Following extensive discovery, Mildred amended her original complaint twice to include allegations of oppressive conduct and criminal conversion. The trial, which was finally held on May 20 and May 21, 1985, resulted in a jury verdict in favor of Mildred awarding her damages of $30,000. Appellants then perfected this appeal.

## ISSUES

Resolution of this appeal requires consideration of the following issues:

1. Appellants explained that they did not notify Mildred immediately of the recrediting, on advice of counsel, because of the pending litigation. Record at 1056.

2. The default judgment was set aside due to excusable neglect on the part of the bank. It claimed that, although the complaint and summons had reached its legal department, they were later inadvertently lost. At trial, however, the bank's representative testified that he had been informed by one of the bank's senior officers on April 25, 1983, that the legal department had received notification of Mildred's lawsuit. Record at 1035. That was more than a month before default judgment was entered.

Prior to trial, the court granted appellant's Motion in Limine in part forbidding Mildred from referring to the default judgment or the circumstances surrounding it. On appeal, Mildred argues this was error. Because of our resolution of this appeal, however, we need not address it.

1. Whether the trial court abused its discretion when it permitted Mildred to pursue, over appellants' objection, a theory of recovery not included in her pleadings.

2. Whether the trial court abused its discretion when it permitted Mildred to pursue a breach of contract theory despite the fact that she had not attached a copy of the contract to her complaint as required by Indiana Rules of Procedure, Trial Rule 9.2(A).

3. Whether the jury verdict and judgment are contrary to law, not supported by sufficient evidence, and constitute excessive damages.

4. Whether the jury's verdict and the trial court's judgment are supported by sufficient evidence.

5. Whether the account application, signed by Mildred, which absolved appellants of liability for any loss, expense or cost incurred from acting upon an instruction or inquiry believed genuine, had any effect.

6. Whether the trial court erred when it gave its tortious conversion instruction.

7. Whether the trial court erred when it gave its accord and satisfaction instruction.

8. Whether the trial court erred when it refused appellants' tendered instruction on mitigation of damages.

## DISCUSSION AND DECISION

*Issues One and Two*

Initially, we must determine what theories of recovery were properly before the jury. Three days prior to trial, Mildred's counsel informed counsel for appellants that she would assert a breach of contract theory. Appellants promptly filed a verified objection claiming that Mildred's original complaint clearly stated a cause of action for fraud and that her two amended complaints added allegations of oppressive conduct and criminal conversion. Their objection continued, therefore, that Mildred never properly pleaded the breach of contract theory. The trial court overruled this objection and appellants now claim this was

error. We need not decide, however, whether, under our notice pleading rules, Mildred's amended complaint stated operative facts sufficient to support a breach of contract theory. Assuming, for purposes of this discussion, that Mildred's complaint did not adequately set out a cause of action for breach of contract, we conclude that the trial court did not abuse its discretion when it permitted her to proceed on that theory.

■ Where the evidence adduced at trial supports a theory of recovery which was not formulated in the pleadings and pre-trial orders, Indiana Rules of Civil Procedure, Trial Rule 15(B), provides the appropriate mechanism for determining whether that issue has been properly placed before the court. The rule states:

"(B) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.* (Emphasis added.)"

This rule was primarily designed to avoid the often harsh results which occurred under the old code pleading system. 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1491 (1971) [hereinafter

Wright & Miller]. As this court has often stated: "The rationale underlying Trial Rule 15(B), *supra*, is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), 175 Ind.App. 416, 430, 372 N.E.2d 742, 751, *trans. denied. See also Ayr-Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 90, 300 N.E.2d 335, 338; *Indianapolis Transit System, Inc. v. Williams* (1971), 148 Ind.App. 649, 658, 269 N.E.2d 543, 550, *trans. denied;* Wright & Miller, at § 1491. Where this purpose is served, courts should liberally construe Trial Rule 15(B) and permit amendment of the pleadings. Wright & Miller, at § 1491.

Trial Rule 15(B) actually embodies two distinct procedures. The first applies when the parties consent, either expressly or impliedly, to the trial of issues not embraced within the pleadings. This provision has been discussed extensively in the opinions of the Indiana courts. *See, e.g., Terre Haute Regional Hospital, Inc. v. El-Issa* (1984), Ind.App., 470 N.E.2d 1371, 1374, *trans. denied; James v. Brink & Erb, Inc.* (1983), Ind.App., 452 N.E.2d 414, 417; *Svetich v. Svetich* (1981), Ind.App., 425 N.E.2d 191, 193–94, *trans. denied; Elkhart County Farm Bureau Co-op v. Hochstetler* (1981), Ind.App., 418 N.E.2d 280, 284–86; *Joy v. Chau* (1978), 177 Ind.App. 29, 37–38, 377 N.E.2d 670, 676, *trans. denied.* Though less frequently addressed, the second procedure set out in Trial Rule 15(B) is equally important. It operates when a party objects on the ground that the proffered evidence is outside the issues framed in the pleadings. Resolution of the immediate error urged by appellants depends upon the proper application of this latter provision.

The second portion of Trial Rule 15(B) is unequivocal. Where it would aid in the presentation of the merits of the case, the court must allow the amendment, unless the objecting party can demonstrate that he will thereby actually suffer prejudice in his prosecution or defense of the action. "To justify the exclusion of the evidence, the rule contemplates that the objecting party be put to some serious disadvantage; it is not enough that he advances an imagined grievance or seeks to protect some tactical advantage." Wright & Miller, at § 1495; *see also Hodgson v. Colonnades, Inc.* (5th Cir.1973), 472 F.2d 42, 48; *Deakyne v. Commissioners of Lewes* (3rd Cir. 1969), 416 F.2d 290, 299; *Iodice v. Calabrese* (S.D.N.Y.1972), 345 F.Supp. 248, 259; 3 J. Moore, Moore's Federal Practice ¶ 15.-14 (2d ed. 1985) [hereinafter Moore's]. In addition, where the objecting party bases his claim of prejudice on the argument that he was not prepared to meet the new theory, the proper course for the court to pursue is to permit the amendment and grant a continuance sufficient to allow for adequate preparation.[3] Wright & Miller, at § 1495; Moore's, at ¶ 15.14; *see also Hall v. Bunn* (1984), 11 Ohio St.3d 118, 122, 464 N.E.2d 516, 520 (interpreting Ohio's nearly identical version of Trial Rule 15(B)).

Applying this analysis to the record in this case, there is no question but that appellants have failed to satisfy their burden of demonstrating prejudice. Their verified objection claimed surprise due to the fact that, for more than two years, discovery and pre-trial preparations had focused exclusively on other issues. In these circumstances, it certainly would have been proper to grant a brief continuance. Appellants never requested one, however. Therefore, they cannot now claim that they were prejudiced in their defense against Mildred's breach of contract theory. *Rabenovets v. Crossland* (D.C.Cir.1943), 137 F.2d 675, 676; *Iodice,* at 259; *Hall,* at 123, 464 N.E.2d at 521.

■ Appellants have also advanced a related argument. At the same time they

---

**3.** Wright and Miller do suggest that, "there will be situations in which the passage of time or changed circumstances results in an irrevocable loss of evidence, the running of an applicable statute of limitations, or the type of prejudice that cannot be obviated by granting continuances or imposing conditions." Wright & Miller, at § 1495. The present case presents none of these situations however.

filed their verified objection, appellants filed a Motion to Dismiss Or In the Alternative, Motion For Judgment On The Pleadings, alleging that Mildred had failed to comply with Indiana Rules of Procedure, Trial Rule 9.2(A). They now claim that the trial court erred as a matter of law when it denied this motion.

Where a party asserts a claim based on a written contract, Trial Rule 9.2(A) requires that document to be attached to the pleading raising that particular claim. The rule provides:

> "(A) When Instrument or Copy Must Be Filed. When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading. Such instrument, whether copied in the pleadings or not, shall be taken as part of the record."

The effect of non-compliance with this requirement is governed by Indiana Rules of Procedure, Trial Rule 9.2(F). That provision states:

> "(F) Effect of Non-compliance— Amendments. Non-compliance with the provisions of this rule requiring a written instrument to be included with the pleading may be raised by the first responsive pleading or prior motion of a party. The court, *in its sound discretion*, may order compliance, the reasons for non-compliance to be added to the pleadings, *or allow the action to continue without further pleading.* Amendments to correct the omission of a required written instrument, an assignment or indorsement thereof, or the omission of a denial of the execution of a written instrument as permitted or required by this rule shall be governed by Rule 15, except as provided by subdivision (A) of this rule." (Emphasis added.)

Appellants argue, relying primarily on *Wilson v. Palmer* (1983), Ind.App., 452

N.E.2d 426, that these provisions required dismissal of Mildred's breach of contract claim. Their reliance is misplaced. In *Wilson*, this court held that it was error to summarily dismiss a complaint for failure to comply with Trial Rule 9.2(A). Rather, where the trial court decides that compliance with Trial Rule 9.2(A) is necessary, it should order the party to amend his pleading to include the omitted instrument. If, after a reasonable time, the party fails to comply, the court must hold a hearing pursuant to Indiana Rules of Procedure, Trial Rule 41(E). The trial court may then, if it so chooses, dismiss for failure to comply with the court's order. *Wilson*, at 430. Nowhere in that opinion, however, did this court suggest that a trial court is required to order compliance with Trial Rule 9.2(A).

By its very terms, Trial Rule 9.2(F) affords the trial court discretion in addressing non-compliance with Trial Rule 9.2(A). The court may, in its sound discretion, either order compliance or permit the action to proceed without amendment of the pleadings. Where, as was the case here, the contract claim arises late in the litigation, it is absolutely clear what document the claim is founded upon, the opposing party has access to a copy of the instrument, and a copy has already been made part of the record, the trial court would not abuse its discretion if it permitted the claim to be litigated without requiring compliance. We hold, therefore, that the trial court committed no error when it permitted Mildred to litigate her breach of contract claim.

*Issues Three and Four* [4]

Appellants next challenge the jury's award of damages as unsupported by sufficient evidence and excessive. The award in this case could have been based on either of two possible theories of recovery. However, it is necessary for us to discuss only one of those theories.[5] We need determine

4. Because appellants' arguments challenging the sufficiency of the evidence to support the jury's verdict mirror those made in their attack on the award of compensatory damages, they will not be discussed separately.

5. Our resolution of this issue makes it unnecessary to address appellants' contention that Mildred was not entitled to treble damages pursuant to Indiana Code section 34–4–30–1, based on

only whether Mildred was entitled to compensatory and punitive damages due to appellants' handling of her account.

Before addressing the merits of this issue, it is necessary once again to remind the parties of our standard of review. We will not reweigh the evidence or judge the credibility of the witnesses who provided it. Rather, we will examine only the evidence most favorable to the judgment and all inferences which can be reasonably drawn from that evidence. The jury's verdict will be set aside only where there is a total failure of evidence, or where it is contrary to uncontradicted evidence. *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind. App., 451 N.E.2d 1099, 1102, *trans. denied.* This standard remains the same and is applied in the same manner regardless of the burden of proof employed in the trial court. *Gash v. Kohm* (1985), Ind.App., 476 N.E.2d 910, 914, *trans. denied.*

■ Appellants initially challenge the award of compensatory damages. They contend that since Mildred's account was fully recredited prior to trial, she suffered no damages. This court has already held, however, that such an action constitutes only a unilateral offer to settle the controversy. *Shelby Federal Savings and Loan Ass'n v. Doss* (1982), Ind.App., 431 N.E.2d 493, 499. Unless accepted, it remains just that; an offer. *Shelby Federal Savings,* at 498. Here, the evidence clearly established that Mildred never accepted appellants' offer to settle. Appellants could not, by virtue of their control over Mildred's account, force on her or the court any adjustment it saw fit to make. *Shelby Federal Savings,* at 498. Thus, there was sufficient evidence from which the jury could conclude Mildred was entitled to compensatory damages.

■ Appellants next challenge that portion of the jury's award attributable to punitive damages.[6] Regardless of whether she ultimately succeeded on on the theory of either breach of contract or tortious conversion, Mildred's burden was the same. She was required to establish, by clear and convincing evidence, that appellant's conduct exhibited elements of fraud, malice, gross negligence, or oppression.[7] *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1021; *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 358–65; *Miller Pipeline Corp. v. Broeker* (1984), Ind.App., 460 N.E.2d 177, 185, opinion on rehearing 464 N.E.2d 12; *First Federal Savings and Loan Ass'n v. Mudgett* (1979), Ind.App., 397 N.E.2d 1002, 1006; *Jos. Schlitz Brewing Co. v. Central Beverage Co.* (1977), 172 Ind.App. 81, 103, 359 N.E.2d 566, 580, *trans. denied.* If the evidence is merely consistent with the hypothesis of fraud, malice, gross negligence, or oppressiveness, punitive damages are not properly awarded. *Orkin Exterminating Co.,* at 1023; *Armstrong,* at 362. "Rather, some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such non-iniquitous human failing." *Armstrong,* at 362; *see also Orkin Exterminating Co.,* at 1023; *Hamilton County Bank v. Hinkle Creek Friends Church* (1985), Ind.App., 478 N.E.2d 689, 691, *trans. denied.* As we pointed out above, however, even when this heightened burden of proof is imposed at trial, our appellate standard of review remains unchanged. *Gash,* at 914; *see also Orkin Exterminating Co.,* at 1022. In light of that standard, we conclude that sufficient

appellants' alleged criminal conversion of Mildred's funds.

**6.** The jury returned only a general verdict awarding Mildred $30,000 in damages.

**7.** In a breach of contract action, a plaintiff is also entitled to punitive damages if he demonstrates, now by clear and convincing evidence,

that the breaching of the contract independently establishes the elements of a common law tort such as fraud. *Art Hill Ford, Inc. v. Callender* (1981), Ind., 423 N.E.2d 601, 602; *First Federal Savings and Loan Ass'n v. Mudgett* (1979), Ind. App., 397 N.E.2d 1002, 1006; *Jos. Schlitz Brewing Co. v. Central Beverage Co.* (1977), 172 Ind. App. 81, 103, 359 N.E.2d 566, 580, *trans. denied.*

evidence exists in the record to support the jury's award.

Appellants argue that their action liquidating Mildred's account was nothing more than a mistake. Although this may be true, it is irrelevant. Mildred's cause of action was based, not on the initial error, but on appellants' conduct once they had been informed of the error. Immediately after Mildred discovered the error, her husband made the first of many calls in an attempt to resolve the matter. He received virtually the same uninformative response each time. During these calls, he also requested a copy of the disputed transaction. Despite repeated assurances that a copy would be sent, none ever was. When appellants finally responded with the results of their investigation, they simply accused Mildred of receiving and cashing the disbursement check. When Mildred's husband attempted once again to inquire about the error he was told, "Mrs. Bright got her money and the account is closed." He was later told that the appellants were too big and too busy to send him a copy of the disputed transaction. In addition, appellants subsequently ignored a letter sent to them by Mildred's attorney. They took no corrective action, in fact, until sometime after Mildred filed her suit. Even then, they did not notify her of the recrediting until almost two months after it purportedly occurred. From this evidence, the jury could properly conclude that appellants had engaged in tortious conduct of the type warranting punitive damages.

This case is not dissimilar to others in which punitive damages have been upheld. In *Art Hill Ford, Inc. v. Callender* (1981), Ind., 423 N.E.2d 601, our supreme court approved an award of punitive damages where, as was the case here, the evidence revealed that plaintiff's legitimate inquiries were brushed off or ignored and that it was only after suit was filed that the problem was finally corrected. *Id.* at 604. In *Shelby Federal Savings and Loan Ass'n v. Doss* (1982), Ind.App., 431 N.E.2d 493, this court confronted similar circumstances. As in *Art Hill Ford*, plaintiffs' repeated inquiries were ignored. The defend-

ant also attempted to settle unilaterally the dispute merely by attempting to recredit plaintiff's account. This evidence, together with evidence that the defendant made certain unsubstantiated claims, was sufficient to sustain the jury's award of punitive damages. *Shelby Federal Savings*, at 499–500.

The present case is not one in which a good faith dispute existed. *See, e.g., Hamilton County Bank*, at 689; *Hoosier Insurance Co. v. Mangino* (1981), Ind.App., 419 N.E.2d 978, 987, *trans. denied; Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 610, 349 N.E.2d 173, 181. Rather, this is a case in which two very large businesses treated the concerns of a small investor with utter indifference over a substantial period of time. In the context of this situation, public policy strongly supports an award of punitive damages. *See First Federal Savings*, at 1006 (holding that, in addition to establishing elements of fraud, malice, gross negligence, or oppression, must show that public interest would be served by the deterrent effect punitive damages would have upon the future conduct of the wrongdoer and parties similarily situated); *see also Jos. Schlitz Brewing Co.*, at 103, 359 N.E.2d at 580.

*Issue Five*

■ Appellants next assert that an account application, signed by Mildred, contained a provision absolving them of liability for acting on instructions believed to be genuine. That provision stated:

> "The undersigned warrants that I (we) have full authority and, if a natural person am (are) of legal age to purchase shares pursuant to this application, have received a current company prospectus and agree to be bound by its terms. I (we) agree that the Bank of New York, Dreyfus Liquid Assets, Inc., the Dreyfus Corporation or any subsidiary or their officers or employees will not be liable for any loss, expense or cost for acting upon any instructions or inquiries believed genuine."

Record at 777. However, appellants have cited no authority whatsoever in support of their argument. We will not, therefore, address the applicability of such a provision to the present circumstances. *Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820, 827; *Matter of Estate of Williams* (1980), Ind.App., 398 N.E.2d 1368, 1371, *trans. denied;* Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

*Issues Six and Seven*

Additionally, appellants contend that the trial court erred when it gave Mildred's instructions on tortious conversion and accord and satisfaction. These issues have been waived however. Appellants failed to set out in their briefs verbatim objections to these instructions as required by A.R. 8.3(A)(7). Rather, they have merely quoted the allegations of error set out in their motion to correct error. The rule requires a verbatim statement of the objections made by counsel, pursuant to Indiana Rules of Procedure, Trial Rule 51(C), during trial. We will not search the record to determine whether appellants have consistently interposed the identical objections to these instructions. Furthermore, appellants have cited only the barest of authority and made no cogent argument, again in direct contradiction to A.R. 8.3(A)(7). Instead, they have offered only conclusory statements in support of their position. This is not sufficient. *See May v. Blinzinger* (1984), Ind.App., 460 N.E.2d 546, 551, *trans. denied.*

*Issue Eight*

Appellants finally assert that the trial court erred when it refused to give their tendered instruction on mitigation of damages. Once again, however, appellants have failed to cite any *pertinent* authority which establishes that they were entitled to have such an instruction read to the jury. In any event, it does not appear that there was any evidence presented at trial which would indicate that Mildred could have reasonably taken additional steps to mitigate her damages. As we stated above, appellants' action in recrediting Mildred's ac-

count was nothing more that a unilateral attempt to settle the dispute. Mildred was not required to accept that offer and dismiss her complaint merely because of appellants' somewhat belated admission of error. The trial court did not err in refusing appellants' tendered instruction. *State v. Ingram* (1981), Ind., 427 N.E.2d 444, 448.

The judgment of the trial court is affirmed.

BUCHANAN, C.J., concurs.

SULLIVAN, J., concurs in result.