Horlacher *et al. v.* Brafford.

No. 17,361.

HORLACHER ET AL. *v.* BRAFFORD.

CONVEYANCE.—*By Husband and Wife, of Land Held by the Wife by Virtue of a Previous Marriage.— Void.*—If a widow, who holds real estate by virtue of her first marriage, marry again, and she and her second husband join in a deed of conveyance thereof, such conveyance is void where there is a child alive by her previous marriage; and should the wife die during the second marriage, the land will descend to such child of the previous marriage. See section 2641, R. S. 1894.

SAME.—*By Husband and Wife, of Land Held by Wife by Virtue of Previous Marriage.—Estoppel.*—Since the child of the previous marriage had no interest in the land attempted to be sold by his mother at the time of such attempted sale, there was, therefore, no sale of such property which such child of the previous marriage could ratify on becoming of age, and consequently no question of estoppel can apply in such a case.

ASSIGNMENT OF ERRORS.—*Ground for New Trial.—Independent Assignment.*—An independent assignment of error, on the ruling of the court overruling a motion for trial by jury, presents no question. Such ruling should have been made a ground for a new trial.

From the Clinton Circuit Court.

*T. H. Palmer, W. F. Palmer* and *Moore & Curtis*, for appellants.

*J. L. Young, W. R. Hines* and *J. C. Farber*, for appellee.

HOWARD, C. J.—This was a suit brought by the appellee for partition of real estate.

The controlling question is whether the appellee is, as he claims to be, the **owner of** the undivided one-half of said real estate.

The facts in relation to such claim of ownership, as found by the court, are substantially as follows:

James M. Brafford, the father of appellee, died intestate December 15, 1862, the owner in fee simple of the land in controversy, and leaving as his only heirs at law his widow, Isabella Brafford, and their only child, the appellee.

On April 3, 1863, Isabella intermarried with one Daniel L. Starkey, and remained the wife of said Starkey until her death, May 6, 1880.

On June 3, 1863, the said Starkey was appointed guardian of appellee, then a minor; and, at the June term, 1864, of the common pleas court, as such guardian and by order of court, he sold the interest of his said ward in said real estate, at its full appraised value, to one Andrew J. McCarty.

On April 2, 1864, Isabella Starkey (formerly Brafford) and Daniel L. Starkey, her husband, conveyed, by quitclaim deed, her interest in said real estate to the said Andrew J. McCarty. Andrew J. McCarty, on receiving said guardian's and quitclaim deeds, went into possession of said real estate, and, on December 11, 1865, conveyed the same, by warranty deed, to the appellant Frederick Hopp who, in turn, conveyed the same, by warranty deed, to his coappellant John A. Horlacher.

On May 15, 1880, one David Thompson was appointed guardian of appellee, and received from Starkey, the former guardian, all the funds remaining in his hands, the property of his said ward.

On September 29, 1882, the appellee became twenty-one years of age, and made final settlement with his said guardian, receiving from him the full amount then found due the ward.

Other facts were found, which need not be set out.

Conclusions of law were also stated in the findings, but will not be considered.

From the facts so found the court concluded that appellee was the owner of the undivided one-half of said land, as the heir of his mother Isabella.

Section 2643, R. S. 1894 (section 2486, R. S. 1881), in force at the death of James M. Brafford, father of appellee, provides that "if a husband die intestate, leaving a widow and one child only, his real estate shall descend one-half to his widow and one-half to his child."

It is not questioned that the one-half of the land in controversy, which, under the statute, descended to appellee from his father, was sold according to law by appellee's guardian, and is now the property of his remote grantee, the appellant, John A. Horlacher.

The remaining one-half of said land, by force of the same statute, descended from appellee's father to appellee's mother.

At the time of the death of appellee's father, and at the date of the re-marriage of his mother, as well as at the time of the quitclaim deed made by his mother and her second husband to Andrew J. McCarty, section 18 of the statute of descents, approved May 14, 1852 (1 G. & H., p. 294), was in force; since amended as section 2641, R. S. 1894 (section 2484, R. S. 1881).

The section, as then in force, was as follows: "If a widow shall marry a second or any subsequent time, holding real estate in virtue of any previous marriage, * * such widow may not during such second or subsequent marriage, with or without the assent of her husband, alienate such real estate; and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be."

By this statute the quitclaim deed made by appellee's

mother and her second husband conveyed no title to said land, and on her death, "during such marriage," May 6, 1880, such real estate, so attempted to be conveyed by her and her husband, went at once to the appellee, her child, "by the marriage in virtue of which such real estate came to her."

The conclusion of law, therefore, that appellee is the owner of the undivided one-half of said real estate is correct.

There can be no estoppel in such a case as this. Appellee had no ownership whatever of the one-half now owned by him at the time his mother attempted to sell it. The policy of the law was then, as it still is, that children of previous marriages should take the real estate of their deceased parent, in preference to subsequent husbands or wives or the children of a subsequent marriage. By force of the above statute appellee's mother could not, during her second marriage, sell her one-half of the land that came to her from his father. It was, however, her land and not her son's. It became his only on her death, she dying during her second marriage. This is not like a case where a mother, an administrator, guardian or trustee sells the remainder or other interest of a minor, and such minor on arriving at full age ratifies such sale of his said interest by accepting the purchase price received therefor. Such cases were *Wilmore* v. *Stetler*, 137 Ind. 127, and *Waters* v. *Lyon*, 141 Ind. 170, decided at last term.

Appellee had no ownership or interest whatever in the land attempted to be sold by his mother, at the time she sold it. There was, therefore, no sale of his property which he could ratify on becoming of age. He afterwards did become the owner of the land on the death of his mother and by descent from her. Had his mother outlived her second husband she could have disposed of

the land by her own deed, and it would never have come into possession of appellee. On her death, however, the land became his sole property, just as if it were then conveyed to him by deed.

The case may seem one of peculiar hardship, but the law itself is just and equitable. The fault was in the parties to the quitclaim deed. They proceeded in ignorance or in disregard of the law. If appellee feels that he can conscientiously take the land, having already received from his guardian the proceeds of the sale of her land by his mother, the law, notwithstanding the erroneous sale under the quitclaim deed, will give appellee the land which he here claims. *Davis, Admr.*, v. *Kelly*, 132 Ind. 309; *Irey* v. *Mater*, 134 Ind. 238.

It is claimed that the court erred in refusing to the appellant Hopp a jury trial. The facts, however, are not disputed by appellants, and it would seem that no different result could have been reached had there been a jury trial.

However that may be, the error is not properly before us for decision. The failure of the court to award a jury trial should have been given as a reason in a motion by said appellant for a new trial. It was not enough to except to the ruling of the court, and to assign such ruling as error. The court was entitled to an opportunity to correct its error by sustaining a motion for a new trial for such reason. The court, having been deprived of this opportunity to correct its error, the same is unavailable. *Ketcham* v. *Brazil, etc., Coal Co.*, 88 Ind. 515.

Some complaint is also made of other conclusions of law by the court; but we are of opinion that the court carefully and equitably adjusted all questions as to moneys paid out by appellants and as to rents and profits received by them. Indeed, it is doubtful whether, in these conclusions and in the decree of the court, the ap-

pellants have not been favored, as appellee contends under his assignment of cross-errors. Appellee, however, does not press the consideration of these cross-errors, and we think the decision of the court was as near equitable as it could well be.

The judgment is affirmed.

