POTTER *v.* DAILY ET AL.

[No. 27,691.   Filed March 23, 1942.   Rehearing denied April 20, 1942.]

44

*Fraser & Isham,* of Fowler, for appellant.

*Thomas A. Daily, Wilson S. Daily,* and *John H. Daily,* all of Indianapolis, and *F. Edward Dumas,* of Fowler, for appellees.

SWAIM, J.—This is an appeal from a judgment rendered in favor of Thomas A. Daily and Wilson S. Daily, partners doing business under the firm name and style of Daily & Daily, against the appellant, George L. Potter, in an action for attorneys' fees. The judgment was based upon the appellees' amended first paragraph of complaint, which alleged that the appellees were attorneys, and that, on February 6, 1933, they were employed by the appellant under a written contract of employment to contest and to attempt to set aside certain codicils to the last will and testament of Fannie W. Potter, the mother of appellant. The written contract of employment recited that the said Fannie W. Potter died on January 9, 1933, leaving surviving her the appellant as her only child and her sole heir at law; that she had made and executed certain codicils to her last will and testament, which practically disinherited the appellant; that at the time these codicils were executed the condition of her health was such as to render her incompetent and incapable of making such codicils; that the appellant desired to employ counsel to seek an amicable settlement between himself and the legatees named in said codicils and, if necessary, to secure his rights by litigation; that in order to accomplish these ends he was employing the appellees

as his attorneys and agreed to pay them an amount equal to either five or ten percent of the property secured from decedent's estate by the appellant, the percentage to depend on whether the results were obtained by compromise or litigation.

The amended paragraph of complaint further alleged that pursuant to said employment the appellees prepared and filed a complaint for said appellant in the Tippecanoe Circuit Court and that in that action a judgment was rendered, September 29, 1933, in favor of the appellant; that pursuant to said judgment said codicils were set aside and the appellant received the estate of his mother pursuant to her last will and testament; that said judgment was rendered pursuant to an agreement compromising all of the rights of the parties involved except the rights of the appellant's minor children.

Said amended paragraph of complaint further alleged that after said compromise was agreed upon, but before said judgment was entered of record, the appellant and the appellees, in order to avoid the necessity of making an appraisement of the property to be recovered by said appellant pursuant to said compromise, mutually agreed that the appellees, Daily & Daily, should receive for their services a fee in the amount of $12,500.00, to be paid by the appellant as follows: $5,000.00 cash when the property of the estate should be delivered to the appellant as executor of said last will and testament, and the remainder of $7,500.00 payable $1,500.00 each year beginning October 18, 1934; that the appellant agreed to assign and deliver certain collateral security to the appellees to secure to them the payment of the deferred balance of said fee, and the appellees agreed that upon the assignment and delivery of said collateral security they would release

the attorneys' lien which they had entered on the margin of the record of said judgment; that after the appellees and appellant had so agreed upon the amount of the fee, said agreement was reduced to writing and signed by the appellees on October 18, 1933. That said contract was then delivered to the appellant who at the same time delivered to the appellees a check in the sum of $4,565.00 in payment of the balance of the $5,000.00 initial payment provided for in said contract.

The amended paragraph of complaint further alleged that the parties to said agreement, pursuant to the terms thereof, made no attempt to appraise said property or reach any other settlement than as provided therein; that thereafter the appellant neglected and failed to deliver to the appellees the collateral security and also failed to pay the deferred installments, all as provided in said contract. The remainder of said amended first paragraph of complaint was as follows:

"That by reason of the foregoing all of said payments are now due and collectible and plaintiffs are entitled to a foreclosure of their liens as attorneys for said George L. Potter.

"That said George L. Potter, Executor of the Last Will and Testament of Fannie W. Potter, deceased, as such Executor has in his hands funds of said estate belonging to George L. Potter, defendant herein, the sole residuary legatee therein, in excess of $12,500.00.

"That said funds were secured by said George L. Potter through the efforts of the plaintiffs herein.

"That by reason of the foregoing facts the plaintiffs herein have a statutory and equitable lien on said funds in the hands of said Executor.

"WHEREFORE these plaintiffs ask that the said lien may be enforced and that they recover judgment against said George L. Potter for $12,500.00; and that

said judgment be declared a lien upon the property recovered by plaintiffs for said George L. Potter, both real and personal, including the funds in the hands of said George L. Potter, Executor of the Last Will and Testament of Fannie W. Potter, deceased, as well as the real estate vested in him as legatee of said Fannie W. Potter, deceased; and that said lien may be foreclosed and that plaintiffs may have execution on said judgment.

"That said George L. Potter, Executor of the Last Will and Testament of Fannie W. Potter, deceased, as such Executor, be ordered to pay out of the funds of said George L. Potter, as residuary legatee of said Fannie W. Potter, the sum of $12,500.00 with interest thereon from the 16th day of October, 1933, at the rate of 6% per annum. And plaintiffs further pray for all other proper relief."

To this amended first paragraph of complaint the appellant filed an answer in two paragraphs: (1), general denial; and (2), plea of *non est factum* to the agreement dated October 18, 1933. On the day the cause was set for trial the appellant moved the court "for a trial of all of the issues in the above entitled case before a jury, as an action at law," which motion was overruled. The trial court found that the appellees were "entitled to recover on their amended first paragraph of complaint from the defendant, George L. Potter, the sum of $9,957.50, principal and interest to date, on the contract sued upon, dated October 18, 1933," and entered judgment accordingly.

The appellant filed a motion for a new trial, assigning as grounds therefor that the decision of the court was not sustained by sufficient evidence and was contrary to law.

The appellant relies on only two assigned errors: (1), The trial court erred in overruling the motion of appellant to try the issues formed by the pleadings in the case by a jury as an action at law; (2), the trial court erred in overruling the motion for a new trial.

The appellant's first assignment of error presents no question for the determination of this court. The submission of the issues for trial is part of the trial. The refusal of the court to submit the issues to a jury, therefore, cannot be made the basis of an independent assignment of error. To make available such an error it must be specified as a ground for a new trial and the action of the court, in overruling the motion for a new trial, then assigned as error on appeal. *Piggly-Wiggly Stores, Inc.* v. *Lowenstein* (1925), 197 Ind. 62, 67, 147 N. E. 771; *Kelley* v. *Bell* (1909), 172 Ind. 590, 595, 88 N. E. 58; *Childers* v. *First National Bank* (1897), 147 Ind. 430, 46 N. E. 825; *George* v. *Massey Harris Co.* (1941), 109 Ind. App. 305, 34 N. E. (2d) 956. In *Horlacher* v. *Brafford* (1895), 141 Ind. 528, 532, 40 N. E. 1078, this court said: "The failure of the court to award a jury trial should have been given as a reason in a motion by said appellant for a new trial. It was not enough to except to the ruling of the court, and to assign such ruling as error. The court was entitled to an opportunity to correct its error by sustaining a motion for a new trial for such reason. The court, having been deprived of this opportunity to correct its error, the same is unavailable."

While some authorities consider the refusal of a jury trial, when properly demanded in a cause triable by jury, as an irregularity in the proceedings of the court, Watson's Revision of Works Practice and Forms, Vol. II, § 1941, p. 519; Elliott's Appellate Procedure, § 848, p. 786, and others consider it an error of law occurring

at the trial, *Alley* v. *State ex rel. Blenzinger* (1881),
76 Ind. 94, all of the authorities are uniform in holding
that in assigning a cause for a new trial under either
of these statutory specifications the particular cause
complained of must be specified. The trial court must
be apprised of the particular act which it is alleged
constitutes the irregularity or error. It is not sufficient
to use the language of the statute. Watson's Revision
of Works Practice and Forms, Vol. II, § 1940, p. 517;
§ 2020, p. 577, and cases there cited.

The appellant also seeks to reach the question of his
being denied a jury trial under the assignment that
the decision of the court was not sustained by
the evidence and was contrary to law, on the
theory that the failure of the court to give the
appellees any equitable relief "constitutes a judgment
binding them that they had not established by the evi-
dence any facts necessary to invoke the equitable juris-
diction of the court." Under our practice the appellant
may not in this manner so escape the consequences of
his failure to specify the action of the court in refusing
a jury trial as one of the grounds in his motion for a
new trial.

The action here was for the recovery of attorneys'
fees under the terms of the contract dated October 18,
1933. The complaint stated a good cause of action at
law and the prayer thereof asked for a money judgment.
It is true that the amended first paragraph of com-
plaint, on which judgment was rendered, also con-
tained allegations concerning an attorney's lien securing
the amount of these fees and that the prayer of the
complaint also asked for the foreclosure of such lien.

The appellant insists, however, that the complaint
did not state an equitable cause of action; that the

statutory attorney's lien does not apply to a judgment such as was entered in the suit contesting the codicils to the will of the appellant's mother; that the complaint did not state facts sufficient to constitute an equitable attorney's lien; and that, therefore, the complaint did not show the appellees entitled to any equitable relief. If the contention of the appellant be correct that the complaint showed only an action at law for attorney's fees, the judgment, giving no equitable relief and adjudging only that the appellees should recover the amount of their attorneys' fees and costs, was in conformity with the theory of an action at law which, according to the appellant's contention, was the only action disclosed by the complaint. In such a case it is difficult to see how the appellant is in a position to complain of the insufficiency of the evidence to support the decision merely because the decision fails to give equitable relief to which the complaint did not, according to the appellant, show the appellees to be entitled.

In support of his contention on this point the appellant cites *Boonville National Bank* v. *Blakey* (1906), 166 Ind. 427, 76 N. E. 529; *Bradley* v. *Aldrich* (1869), 40 N. Y. 504; *Brinckerhoff* v. *Bostwick* (1887), 105 N. Y. 567, 12 N. E. 58.

In Boonville National Bank, *supra,* the appellee, a trustee in bankruptcy, brought a suit against the appellants to recover money paid to the different appellants by the bankrupt, on the theory that the payments were made by the bankrupt and accepted by the appellants as preferences. The complaint alleged that the payments were made pursuant to a fraudulent and secret combination between the bankrupt and the appellant creditors. The appellants filed motions for separate trials by jury, which motions were overruled and the cause

was tried by the court. In passing on the case this court said that the allegation of the conspiracy afforded the only basis for the joinder of the defendants in a bill in equity and then continued at p. 450: "The former practice in chancery was to dismiss the bill when it was disclosed that there was no ground for equitable interference, even though a cause of action at law appeared to exist, and under the code, where law and equity are administered in the same court, a plaintiff cannot be permitted to deprive the defendant of the right to a jury trial by the making of allegations whereby an equitable issue is tendered, and then maintain the finding on the ground that sufficient facts were shown to warrant a recovery in a court of law." While this langauge might seem to lend support to the contention of the appellant that the question of the refusal of a jury trial might be presented without having the action of the court in overruling the motion for a jury trial expressly assigned as a ground for a new trial, an investigation of the record and briefs of that case discloses the fact that each of the four appellants therein raised the question under the assignment of error of overruling the motion for a new trial which, as one of the grounds for a new trial, expressly set out the action of the court in overruling the motion for a jury trial. The question was, therefore, properly presented in that case. In support of the language in question the court relied on the two New York cases, *Bradley* v. *Aldrich, supra,* and *Brinckerhoff* v. *Bostwick, supra.*

*Bradley* v. *Aldrich, supra,* was an action in equity to set aside a contract and conveyances for fraud. The complaint therein did not state a cause of action at law and did not seek a money judgment. The trial court awarded only a money judgment. The New York code

provided, contrary to our procedural law, that questions of law could be presented *"in every stage of the appeal."* (Our italics.)

The order of the General Term of the Supreme Court reversing the judgment of the trial court was affirmed by the Court of Appeals "on the ground the complaint did not state any other cause of action than the equitable one, and there was a total failure of proof as to that." However, the court there said, "It may be true that where two causes of action, one legal and one equitable in their nature, are stated in the same complaint, the court may try the cause, and if the defendant, having just opportunity, does not demand a jury for the trial of such of the issues as the Code and the Constitution both require to be tried by the jury he may be held to waive a trial by jury." This case cannot be considered as an authority supporting the appellant's contention as to the procedural question involved in the instant case.

In the Brinckerhoff case, *supra,* both the pleadings and the facts showed an equitable cause of action and the question was only as to the propriety of trying certain questions of fact to a jury. Nor do the additional authorities cited by appellant in his brief on petition to transfer throw any light on the procedural question here involved. The opinions therein show neither how the question was raised nor how it should have been raised.

If the issues presented by the pleadings in the instant case presented only an action at law, as the appellant contended, and a jury trial thereon was improperly refused by the trial court, such error could be saved only by expressly assigning such action of the court as a cause for a new trial. Error in such action of the court is not saved by stating as a

ground for a new trial that the decision is contrary to law.

The appellant in support of his right to present this question under the assignment that the decision is contrary to law cites *Robinson Machine Works* v. *Chandler et al.* (1877), 56 Ind. 575, in which it was said that a verdict is contrary to law within the meaning of the code when the verdict is improperly affected by any error of law occurring at the trial. Many later cases have held that to present on appeal the question of an error of law occurring at the trial, the particular error complained of must be specified in the motion for a new trial. Watson's Revision of Works Practice, Vol. II, § 2020, p. 577, and cases there cited.

The appellant also contends that the decision is not sustained by sufficient evidence because the contract of October 18, 1933, was entered into between the parties while the relation of attorney and client existed between them; that, therefore, the burden was upon the appellees to show that the contract was fair and free from fraud or undue influence; and that appellees failed to introduce any evidence to overcome the presumption of fraud and undue influence which arises as to a contract made between an attorney and his client.

The record fails to support this contention for the reason that there was evidence to support a finding by the court that at the time the parties reached the agreement set out in the contract of October 18, 1933, no such confidential relation existed between the appellant and the appellees as would cast on the appellees the burden of proving that the contract was fair and not tainted by fraud or undue influence.

It is true that if one who, while acting in a con-

fidential capacity with another, induces the other to enter into a contract which is to the advantage of the fiduciary, the fiduciary, in attempting to enforce the contract, will have the burden of proving that the contract is fair and reasonable and that he did not take any advantage of his confidential relationship. *Rochester* v. *Levering* (1886), 104 Ind. 562, 4 N. E. 203. Ordinarily there is between an attorney and his client such a relationship of trust as to bring within this principle a contract entered into between them during such relationship. *Shirk* v. *Neible* (1901), 156 Ind. 66, 59 N. E. 281. This principle extends, however, only to cases where the agreement is made while the fiduciary relationship exists as a fact; where, because of the relationship, confidence and trust is reposed on the one side and is accepted on the other.

It has been held that before the attorney undertakes the business of the client they are dealing at arm's length and no confidential relation then exists. 5 Am. Jur., Attorneys at Law, § 159, p. 356. Likewise as to the relation after the services are completed it is said in 5 Am. Jur., Attorneys at Law, § 162, p. 358:

"A contract between attorney and client as to the compensation which the attorney is to receive for legal services, entered into after the complete performance of those services, is, assuming that the client was fully informed as to the business transacted, valid and enforceable; under such circumstances, the parties deal at arm's length, and they may fix the compensation at whatever figure they think proper. It is not necessary that the client have independent advice if he is in a position to form an entirely free and unfettered judgment."

See, also, 19 A. L. R. 847, 850 and cases there cited.

In the instant case there was evidence from which the court might reasonably have inferred that the appellees had completed all of the services for which they were employed before the parties entered into the contract of October 18, 1933, fixing the amount of the fees. The contract of February 6, 1933, employed the appellees to consult and advise with the appellant "as to his rights under said will and codicils to the end that an amicable settlement be made, if possible, between him and the legatees named in said will, but if impossible, then by litigation." There was evidence tending to prove that pursuant to this employment the appellees made an investigation of the merits of the case, interviewing witnesses at various places in Indiana, Florida, Washington, D. C., Pennsylvania, Michigan and Ohio; that they prepared and filed in the Tippecanoe Circuit Court a complaint to contest and set aside the probate of certain codicils to the last will and testament of Fannie W. Potter, deceased; that they participated in numerous conferences and negotiations relating to the compromise of said action; some of which conferences were held in the office of the appellees; some in the office of Rochester Baird in Lafayette and others in the office of Stuart, Stuart & DeVol in Lafayette; that in the course of these negotiations one offer of compromise was procured for the appellant which he refused to accept and which was much more favorable to him than the one finally accepted; that on August 16, 1933, the parties to the action executed a compromise agreement pursuant to which a final judgment was entered September 29, 1933, setting aside the codicils to said will; that when the parties reached the compromise agreement the services of the appellees were completed, and thereafter, Rochester Baird, the general attorney for

the appellant, was the only person actually acting as attorney for the appellant. In the appellant's reply brief he says, "The 'preliminary agreement with his wife' was in fact the settlement of the will case. The only real adversary parties in the will case were George L. Potter's wife and his children. The agreement as to the children was consummated in August with the exception that because of their minority it had to be duly approved by the court, which was not then in session." It was the "settlement of the will case" for which the appellees were hired. On the question here involved the fact that the names of the appellees were carried of record as attorneys for the appellant in the will case until the final judgment was entered on September 29, 1933, was not conclusive as to the time the services of the appellees were completed, nor as to the time that the confidential relationship, if any, between the appellees and the appellant ceased to exist.

In the instant case there was also evidence from which the court could properly have found that the appellant had the independent advice of his regular attorney, Rochester Baird, throughout the entire course of his transactions with the appellees. Baird made the original contract with the appellees for the appellant. The original contract of employment, dated February 6, 1933, was executed by the appellant and the appellees in Mr. Baird's office. At the different conferences concerning the will contest and the compromise agreement, Baird was present representing the appellant as "counsellor and adviser." After the compromise agreement was finally signed on August 15, 1933, Baird notified the appellees that the agreement had been signed. Judgment, pursuant to said compromise agreement was entered in the will contest action on September 29, 1933. On three con-

secutive days, October 16th. to 18th., both inclusive, conferences between the appellant and appellees, as to the terms and provisions of the contract of October 18, 1933, were held in Baird's office. There was testimony that Baird was present at these conferences; that "every now and then Mr. Potter would say, 'Well, excuse me, gentlemen, I want to talk to Rochester,' and they would go into the adjoining room and talk over some details and then come back."; that during the conference on October 17th., the appellant agreed to the amount of $12,500.00 as the total fee for the services of the appellees, and Baird then said, "George, I think that is a fair fee and you ought to pay the money"; that on October 18th., a copy of the written agreement was handed to the appellant who examined it and said that it embodied their agreement. On his failure to pay the deferred payments, the appellant was sent a letter by the appellees threatening a suit if appellant did not pay the balance of $7,500.00 claimed to be due. This letter was answered by Baird who later went to the appellees' office and offered to give the appellees the certified check of appellant for $5,000.00, if they would accept it in full payment of their claim. This was evidence from which the court could properly have inferred that throughout the entire course of the transactions between the appellant and the appellees, and especially in the conferences culminating in the agreement evidenced by the written contract of October 18th., the appellant was relying on and receiving independent advice from Rochester Baird, his regular attorney; and that in the matter of fixing and agreeing upon the amount of appellees' fees the appellant was not relying on the appellees but was dealing at arm's length with them. This was not such a confidential relationship as to throw on the appellees

the duty of protecting the rights and interests of the appellant with respect to the contract of October 18, 1933. It is, therefore, unnecessary to consider the question as to whether there was evidence from which the court might have found that the fee fixed by said contract was fair and reasonable.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 40 N. E. (2d) 339.