Elena Yee LUTZ, Appellant
(Defendant below),

v.

Melvin M. BELLI, Sr.; Law Offices of
Melvin M. Belli, Sr.; and Sam Yorty,
Appellees (Plaintiffs below).

No. 06A01–8605–CV–137.

Court of Appeals of Indiana,
First District.

Dec. 16, 1987.

Robert D. Maas, Jennings, Maas & Stickney, Indianapolis, for appellant.

David J. Backer, Backer & Backer, Indianapolis, for appellees.

ROBERTSON, Judge.

Elena Yee Lutz (Lutz) appeals a general judgment in favor of Melvin M. Belli, Sr. (Belli) and Sam Yorty (Yorty) in a consolidated action for attorney's fees.

We affirm in part and reverse in part as to Belli and reverse as to Yorty.

Belli brought an action for attorney's fees based upon a contingent fee agreement between himself and Lutz. At the time the attorney-client relationship was formed, Lutz was involved in at least five distinct legal proceedings, each relating to the estate of her deceased husband, Herbert Lutz. Mr. Lutz had been declared incompetent and under the undue influence of Lutz by an Indiana probate court prior to his death. A will executed before the period of incompetency was probated in Indiana. Lutz contested that will and sought the probate of a second will in California. She also brought an action in federal court seeking removal of the state actions. Mr. Lutz's son, Chris, also brought litigation in the Vermont and Virgin Islands courts to avoid transfers of real estate made to Lutz by Mr. Lutz during the period of incompetency.

Belli was retained by Lutz as primary counsel in the will contest proceedings in the California state and federal courts. His firm ultimately settled all of the litigation; as a consequence of the settlement which occurred after three years of negotiations, Lutz received nearly one-half of the

estate, valued for estate tax purposes at over four million dollars.

Yorty's action for attorney's fees was based upon a promissory note for $50,000 executed by Lutz after a settlement had been reached. Yorty served as Lutz's legal advisor before Mr. Lutz's death and throughout all of the litigation.

Lutz presents three issues for our review:

(1) Whether the evidence is sufficient to sustain the trial court's award of attorney's fees in the amount of $85,394.49 to Belli based upon a contingent fee agreement;

(2) Whether the trial court abused its discretion by admitting into evidence a written fee agreement and by permitting Belli to amend his complaint to conform to the evidence without granting Lutz a continuance; and,

(3) Whether the evidence is sufficient to sustain the award of attorney's fees to Yorty.

## I.

Lutz argues the trial court erred by enforcing the fee agreement because Belli failed to prove that the fee provided by the agreement was reasonable and obtained without undue influence. She also contends the trial court improperly construed the agreement in calculating the award.

■ In Indiana, the nature and amount of a legal fee may properly be made the subject of contract. Contracts which make the payment of a fee contingent upon an attorney's success are obligatory when fairly made between counsel and client and when made in good faith, free from fraud or imposition. However, such contracts are carefully scrutinized by the courts. If it appears that a contract has been obtained by any undue influence of attorney over client, by fraud or imposition, or that the compensation provided for is clearly excessive, the party aggrieved will be protected. *Draper v. Zebec et al.* (1941), 219 Ind. 362, 37 N.E.2d 952, overruled on other grounds, *O'Donnell v. Krneta* (1958), 238 Ind. 582, 154 N.E.2d 45; *Potter v. Daily* (1942), 220 Ind. 43, 40 N.E.2d 339; *French v. Cunningham et al.* (1898), 149 Ind. 632, 49 N.E. 797, 799.

■ Lutz contends the evidence establishes that the contingent fee agreement was entered into between the parties during a period of time when the relationship of attorney and client existed between them. Contracts entered while the relation of attorney and client exists are presumptively invalid. The burden of proof is placed upon the attorney to show the fairness of the transaction and that the compensation provided for in such agreement does not exceed a fair and reasonable remuneration for the services which have been rendered or which it is the attorney's duty to render. *French, id.; Potter, supra.* While the evidence is conflicting on this point, there is evidence in the record from which the trial court could have determined that no confidential relationship existed at the time the agreement was made.

■ Belli represented both Elena and Herbert Lutz in their efforts to move Mr. Lutz's guardianship from Indiana to California. Belli billed the Lutzes for those legal services. After Mr. Lutz's death, Belli also counseled Elena Lutz about obtaining her share of Mr. Lutz's estate. This is the point at which, according to Belli, possible fee arrangements were considered and discussed with Lutz. Belli's office, in fact, did not become actively involved in any of the will contest actions for some time after Mr. Lutz's death; the record indicates that Belli's firm was at least the third law firm to become primary counsel for Lutz in the will contest proceedings in California. Lutz testified that the written fee agreement upon which the trial court ultimately calculated the recovery was executed in September, 1982 but Belli's firm did not begin actively representing her until January, 1983. Accordingly, while we are cognizant of the rule that a contingent fee arrangement is presumptively invalid in cases where the agreement is made after the fiduciary relationship exists, the evidence most favorable to the trial court's judgment does not support Lutz's assertion that those circumstances existed in this case.

Furthermore, the evidence presented by Belli adequately rebuts the presumption of invalidity. Belli offered Lutz other possible methods for computing his fee such as payment by specific task or hourly basis but Lutz chose a contingent arrangement. Belli advised Lutz to accept a contingent fee arrangement because the will contest, if maintained in Indiana, would be difficult given Lutz's ethnic background, the differences in the Lutzes' ages and the determination of incompetency prior to Mr. Lutz's death. Lutz sent Belli a written fee agreement providing for a contingent fee of 10% after Belli had informed her that his standard practice was to seek 25% to one-third of the recovery. Belli testified that he had never before accepted such a low fee for multi-district litigation. Lutz succeeded in moving Belli from his standard fee in a case which Belli himself had appraised as difficult. The facts established by Belli demonstrate that he and Lutz dealt at arm's length. Under these circumstances, the parties were free to fix the compensation at whatever figure they thought proper. *Potter*, 40 N.E.2d at 344.

[4] Lutz also argues that the evidence is insufficient to show that the fee was reasonable. In particular, she claims Belli failed to meet his burden of proof because he did not present independent expert testimony on the reasonableness of the fee, did not affirmatively prove the number of hours spent on the case, or produce evidence on each of the criteria enumerated in former Disciplinary Rule 2–106.

We agree with Lutz that Belli bears the burden of proving that his fee is not clearly excessive under the circumstances. *Draper, supra.* But here, Belli and Lutz have sought to avoid payment of the fee at a set hourly rate by contracting for a contingent arrangement. We reiterate that such contracts are enforceable in Indiana when freely and fairly entered. *Id.* When an attorney seeks recovery on a contingent fee contract the actual recorded time spent on the case is completely immaterial. *Fitzgerald et al. v. Wasson Coal Mining Corporation* (1965), 138 Ind.App. 176, 182, 212 N.E.2d 398. Hence, the fair market value

of services actually rendered is not the primary consideration; rather, the more pertinent question is whether the contract provides for a fee which is commercially reasonable under the circumstances. *See e.g. Berkemeier v. Rushville National Bank* (1982), Ind.App., 438 N.E.2d 1054 (Staton, J., concurring in result; Hoffman, J., dissenting). *But cf., Potter v. Daily* (1942), 220 Ind. 43, 40 N.E.2d 339 wherein the court having determined that the agreement for fees was entered freely and fairly declined to address the question whether there was evidence from which the court could have found that the fee fixed by the contract was fair and reasonable.

We find facts in the record supporting the conclusion that the employment contract between Belli and Lutz was a reasonable attorney-client fee agreement under the circumstances. The record establishes that the agreement was a risky one for Belli because Lutz's chances of success at trial were "very slight:" Lutz was Mr. Lutz's third spouse, forty years younger and of chinese origin; the estate consisted primarily of the Eli Lilly fortune; the first battle, which would carry some weight in the other proceedings, would be in Indiana; and, the judge hearing the case would be the same judge who had earlier determined Mr. Lutz to be incompetent. Discovery was disheartening for Belli because the opposition had discovered a number of facts which bolstered the argument that Mr. Lutz was incompetent and under Lutz's undue influence. Resolution of the matter was complicated by the size of the estate, which raised considerable tax concerns for the estate and for Lutz, and by the fact that the litigation was pending in four states. Lutz hired and fired attorneys in each jurisdiction frequently and reversed her position in the negotiations often.

The record also supports the conclusion that Lutz received the benefit of her bargain. Belli estimated his firm's fee on an hourly basis at between $150,000 and $200,000. Belli's associate, who did most of the negotiating on Lutz's behalf, estimated over 800 hours on the case. He documented over 400 phone calls, drafted many of the pleadings and documents filed in

Indiana, and represented Lutz at her deposition and at status conferences. Belli's associate's hourly rate was $150 per hour. Belli, who valued his services at $350 per hour, talked to Lutz "incessantly", spoke to attorneys in Indiana over one hundred times and flew to Los Angeles and Indiana 10–12 times on Lutz's behalf. Belli also hired a tax expert whom his firm paid. The settlement resulted in gift tax savings to Lutz of $500,000 and an estate tax refund which Lutz received.

Finally, we note that Lutz had worked with Belli in the past and had firsthand knowledge of the quality of the legal services she was obtaining. She chose Belli because of his expertise in litigation and probate. The record establishes that, though Belli did not perform all of the legal services personally, Lutz strategically counted on the advantage Belli's reputation would bring to her, particularly in the probate proceedings pending in California. Under these circumstances, we conclude the evidence was sufficient to support the conclusion that the fee provided by the contingent fee agreement involved here was not excessive.

■ Lutz also claims the trial court erred in calculating the amount of the award. First, she contends that Belli should have been awarded damages in quantum meruit rather than the fee provided by the contract because Belli voluntarily abandoned the contract before he had completely performed. Lutz cites *French, supra* which holds that where the complete performance of an attorney's services has been rendered impossible or otherwise prevented by the client and the compensation agreed upon is contingent upon a successful resolution of the case, the measure of damages is not the contingent fee but the reasonable value of the services rendered. 49 N.E. at 798, 799.

We view this argument as raising a question of fact which the trial court resolved against Lutz. The evidence indicates that Belli was retained to replace Lutz's counsel in the California will contest proceedings. Lutz had counsel representing her in the Indiana proceedings. Though no distribu-

tion of the estate's assets had occurred because of Lutz's contemptuous refusal to remove a lien on one of the properties to be transferred, at the time a substitution of counsel occurred the settlement agreement had been executed, the federal estate tax return had been amended and refiled, and the parties were awaiting word from the IRS. The trial court could logically have concluded, based upon this evidence, that Belli had completely performed his agreement to resolve the matter and that the representation of Lutz in contempt proceedings in Indiana was not a part of their original agreement.

■ Next, Lutz claims the trial court erred in awarding Belli $4,000 for estimated expenses, in addition to a percentage of the recovery. Belli presented documentary evidence of courier and rental car expenses totaling $468.85. The remaining $3,500 included estimated airfare and hotel expenses incurred by one of Belli's associates. Lutz argues that the agreement contemplates payment of all fees as a percentage of the recovery and that Belli failed to prove with sufficient certainty the actual amount of expenses. We agree with Lutz in both respects but address only the agreement.

In interpreting contracts, courts will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291, 293, *trans. denied.* Absent ambiguity, the court will not construe a contract. Rather, where the terms of the contract are plain and clear on the face of the document, such terms are conclusive as to the meaning of the contract and the court will apply the contract's provisions according to the plain language of the document. *Reeder v. Ramsey* (1984), Ind.App., 458 N.E.2d 682, 685. In so doing, the court will read all of the contract's provisions together to harmonize the words and phrases used and to give effect to the parties' intentions as established at the time they entered into the agreement. *Washington National Corp.*

*v. Sears Roebuck* (1985), Ind.App., 474 N.E.2d 116, 121, *trans. denied.*

The fee agreement provides that Belli and his firm "agree to take my case and shall receive as a fee, CONTINGENT ON RECOVERY, of the 'GROSS RECOVERY' ... the sum equal to TEN (10%) PERCENT of the 'GROSS RECOVERY' if claims are settled before trial." While the agreement does not delineate the acts contemplated by the phrase "take my case", it does expressly incorporate an agreement by Belli "to advance all costs." The ordinary meaning of "costs" broadly incorporates expenditures or outlays of money, time, and labor; when used in a legal context, "costs" are defined generally as "expenses incurred in litigation." Webster's New International Dictionary 601 (2d ed. 1943). Used as a verb, the word "advance" means "to furnish by way of an advancement." *Id.* at 37. The noun "advancement" is defined as "property given in advance of a future distribution." According to Webster, an advancement differs from an "advance" in that the recipient cannot be called upon to account or repay "except by this charging of it." *Id.* Thus, we are led to the conclusion based upon the plain language of the agreement that the parties intended the percentage of gross recovery to reimburse Belli in full for his time, labor, and money expended on behalf of Lutz. This conclusion is supported by a reading of the document as a whole, particularly the latter part of the agreement, which provides that in the event of settlement, the sum equal to attorney's fees shall be in one check with the balance of the recovery made payable directly to Lutz.

Thus, according to the fee agreement, Belli was entitled to 10% of the "gross recovery." The agreement specifies that for purposes of computation of gross recovery, all real properties recovered shall not be included in the computation and any sums payable to Chris Lutz "shall also be first deducted from the total recovery prior to the attorney's computation of fees." The evidence established that pursuant to the settlement agreement Lutz was to receive through the estate a net total tax refund exclusive of interest owed to Chris

Lutz in the amount of $476,444.96, (R.1028); shares of common stock equal in value to $337,500; the Virgin Islands property, and the estate's interest in writings, scripts, and motion pictures created by Mr. Lutz, which were accepted by the IRS as having no value. The trial court calculated Lutz's gross recovery to be in the sum of $813,944.96. This sum is sustained by the record. The award is thus reduced from $85,394.49 to $81,394.49.

## II.

■ Lutz claims the trial court abused its discretion by admitting into evidence a written fee agreement, by granting Belli's motion to conform the pleadings to the evidence and by denying her motion for continuance. She maintains the agreement should have been excluded because the document's existence was not disclosed to her until the evening before trial. According to Lutz, the admission of the document permitted Belli to change his theory at the last minute, from quantum meruit to breach of contract, greatly prejudicing her defense.

The trial court admitted the document after the evidence indicated to the court that Belli had attempted to comply with Lutz's request for production in good faith and had exercised due diligence in disclosing the existence of the document upon its discovery. During discovery, Belli had made his will contest files available to Lutz for inspection. Belli's staff discovered the written agreement in a search of files related to the Herbert Lutz guardianship matter the evening before Belli departed for the trial. Belli brought the document with him from California; its existence and contents were disclosed to Lutz upon his arrival in Indiana. Belli told the court that he did not recall the written agreement until his memory was refreshed by the document. He acknowledged that certain handwriting on the document was his own.

The admission of evidence and the conduct of discovery are matters left entirely to the discretion of the trial court. *Rust v. Guinn* (1982), Ind.App., 429 N.E.2d 299,

*trans. denied; McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, *trans. denied.* Barring an abuse of that discretion, there will be no reversal on appeal. The trial court's finding that Belli had complied with discovery in good faith is not a conclusion which is clearly against the logic and effect of the facts or reasonable, probable inferences to be drawn from those facts. *See Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, 290. Accordingly, the trial court did not abuse its discretion in admitting the agreement.

■ We also find no error in the trial court's grant of Belli's motion to conform the pleadings to the evidence and denial of Lutz's motion for a continuance. The decision to grant or deny an amendment of the pleadings pursuant to Ind.Rules of Procedure, Trial Rule 15(B) is a matter entrusted to the trial court's sound discretion. Whether or not to grant a continuance when the pleadings are amended is also a matter of discretion. Absent a showing of clear and prejudicial abuse of discretion, the trial court's ruling will not be disturbed on appeal. *Ayr-way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335, 337, 339.

Trial judges are encouraged to liberally construe T.R. 15(B) to permit amendment when to do so would promote relief for a party based upon the evidence actually forthcoming at trial. *Bank of New York v. Bright* (1986), Ind.App., 494 N.E.2d 970, 973. Ordinarily, when an objecting party claims, as Lutz does here, that she is prejudiced by the amendment because it introduces a new theory which she was not prepared to meet, the proper course for the court to pursue is to permit the amendment and grant a continuance sufficient to allow for adequate preparation. *Id.* at 974. However, a continuance is required only when the amendment of the pleadings would prejudice the moving party's substantial rights in maintaining her action or defense. The burden is upon the movant to demonstrate to the trial court in what

way she has been denied her substantial rights. *Ayr-way Stores,* 300 N.E.2d at 337–338; T.R. 61.

Having reviewed Belli's original complaint, we believe it clear that more than one legal theory supports recovery under the facts alleged. Belli pleaded his claim in four short paragraphs, alleging in substance that he was licensed to practice law and provided extensive legal services to Lutz at her request for which $65,000 was due and owing. Belli sufficiently pleaded facts in his complaint to notify Lutz of the evidence he expected to present at trial. The amendment did not alter the factual theory of Belli's claim for relief; hence, there can be no abuse of discretion here because the proffered evidence was not outside the issues framed by the pleadings. *See Ayr-way Stores, id.* at 337.

Moreover, we believe it apparent that the admission of the written agreement and subsequent amendment of the pleadings did not preclude Lutz from adequately apprising herself of Belli's theory of liability or from preparing a defense. Belli testified without objection that he had an express oral contract with Lutz for a contingent fee.[1] Thus, the trial court had before it a claim for recovery on a contract whether or not the written agreement was admitted into evidence and the pleadings were formally amended. In this case, the agreement was a "mere technical addition to the theory of the claim for relief or the facts on which it [was] based," C. Wright & A. Miller, Federal Practice & Procedure, § 1495 at 479 (1971); as such, it did not so prejudice Lutz as to deny her substantial rights.

Lutz also alleges she was prejudiced by the amendment and denial of a continuance in that she was deprived of the opportunity to discover the circumstances surrounding the document's drafting and execution. At trial, Lutz objected to the document's admission on the basis of a failure to comply with discovery requests. She did not question the document's genuineness when the

1. Contingent fee contracts are required to be in writing in Indiana. Rules of Professional Conduct 1.5(c). (Effective January 1, 1987.) The prior Code of Professional Responsibility strongly recommended that such contracts be in writing.

document was offered. Neither did she object to the foundation laid for the document's admission.[2] Consequently, we view her argument that she was denied discovery as analogous to the claim made by the defendants in *Ayr-way Stores, supra*, that they were denied the right to voir dire on strict liability and warranty issues incorporated by a T.R. 15 amendment. Our supreme court found no merit in the assertion, rejecting the notion that a trial must start anew whenever a T.R. 15 amendment is allowed and emphasizing that the efficacy of the rule to promote speedy justice would be destroyed by such an application.

In sum, we find Lutz has failed to demonstrate any error in ruling on the admissibility of the written fee agreement and has failed to show that she was prejudiced by the amendment of the pleadings or the denial of her motion for continuance.

### III.

Lutz claims that the evidence is insufficient to sustain the award of attorney's fees to Yorty. Yorty based his claim for $50,000 in fees on a promissory note executed by Lutz long after their fiduciary relationship was formed. Consequently, Lutz is correct in her assertion that the law presumes the transaction to be fraudulent and the fee excessive. The burden was therefore upon Yorty to demonstrate to the trial court that the transaction was fair and the amount agreed upon was a reasonable compensation for the services he performed and would be called upon to perform under Lutz's employment. *Shirk v. Neible* (1901), 156 Ind. 66, 71, 59 N.E. 281; *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 999, *trans. denied.* Having carefully reviewed and considered the evidence most favorable to the trial court's judgment, we must conclude that the evidence is insufficient to

sustain a finding that the $50,000 fee agreed upon was a reasonable remuneration for the services performed.

The evidence supporting the judgment establishes that over the seven-year period of his attorney-client relationship with Lutz, Yorty provided Lutz services on a variety of matters including efforts to obtain funds from Mr. Lutz's trustee, real estate transfers in the United States and St. Lucia, the creation of a corporation for Lutz's import business as well as counseling on the guardianship and will contest actions. Yorty functioned as Lutz's advisor and intermediary throughout the estate proceedings, traveling extensively and appearing for Lutz a number of times, though not as counsel of record. Yorty also formally represented Lutz at contempt proceedings instituted after Lutz refused to comply with the terms of the settlement agreement. The evidence establishes that Yorty asked for the payment of his fees many times, that Lutz agreed to pay Yorty for his services and that Yorty and the California attorneys involved in the settlement agreed that a fair compensation for his labor was $100,000. Yorty then compromised the fee to $50,000, and subsequently obtained the promissory note.

There is evidence in the record that Yorty performed services on Lutz's behalf and evidence supporting the conclusion that these services were not performed gratuitously. This evidence, however, does not demonstrate that Yorty performed $50,000 worth of legal services. Yorty presented no independent opinions of the fair market value of the services rendered. He was unable to estimate and did not document the hours expended on Lutz's behalf, either in total or on any of the projects identified above. His testimony establishing the extent of his involvement in these matters is

---

2. Lutz alleges in a one sentence argument that the trial court abused its discretion "by failing to grant Lutz's motion to correct errors after Lutz submitted additional affidavits supporting a showing that Elena Lutz was prejudiced by being forced to go forward with the trial." The affidavits contain the opinion of a handwriting expert to the effect that the signature on the agreement was a forgery.

In her reply brief, Lutz treats this statement as preserving her allegation, raised in her motion to correct errors, that the trial court erred in failing to grant her a new trial based upon newly discovered evidence. However, she cites no authority for her assertion in either brief. Accordingly, we deem any error in failing to grant a new trial waived. Ind.Rules of Procedure, App.Rule 8.3(A)(7).

at best vague. While Yorty presented numerous letters inquiring about the progress of another attorney's work, none of the letters offered demonstrate any particular legal expertise. Moreover, Yorty did not offer any documents which he drafted on Lutz's behalf. The record indicates that Yorty made numerous phone calls and trips at Lutz's request but there is no indication that he bore the cost of these trips himself. Finally, we would note that the estate proceedings were held before a judge other than the one presiding in this matter; hence, the trial court's familiarity in this action with the will contest proceedings and each of the roles played by the numerous attorneys involved in that case was dependent upon the evidence presented. In short, the evidence presented by Yorty did not provide a basis from which the trial court could infer the fair value of the services actually performed by Yorty. While we are extremely reluctant to disturb a trial court's determination on appeal, we find a dearth of evidence which would rebut the presumption that the fee agreed upon was excessive. Accordingly, we reverse the trial court's award of fees to Yorty.

Judgment for Belli is affirmed in part, reversed in part, and remanded to the trial court with instructions to reduce the award to conform to the agreement. Judgment reversed as to Yorty.

HOFFMAN, J., concurs.

RATLIFF, C.J., concurs with separate opinion.

RATLIFF, Chief Judge, concurring.

I cannot agree with the statement on pages 97–98 of the opinion that "[u]nder these circumstances, the parties were free to fix the compensation at whatever figure they thought proper." Attorneys' fees must be reasonable. The Code of Professional Responsibility, DR 2–106(A) in effect prior to January 1, 1987, prohibited a lawyer from entering into an agreement for, or charging or collecting a clearly excessive fee. The Rules of Professional Conduct, Rule 1.5(a), effective in this jurisdiction since January 1, 1987, provide that a lawyer's fee must be reasonable. Contingent

fees are subject to the "reasonableness" and "clearly excessive" tests of the Rules and the Code. ABA Committee on Ethics and Professional Responsibility, Informal Opinion 86–1521 (October 26, 1986). Courts have applied the "reasonableness" test in upholding contingent fees, *McKenzie Constr., Inc. v. Maynard* (3d Cir.1987), 823 F.2d 43, and, on the other hand, have disciplined lawyers for charging fees pursuant to a contingent fee contract, when those fees were clearly excessive. *See Florida Bar v. Moriber* (1975), Fla., 314 So.2d 145; *Committee on Legal Ethics of West Virginia State Bar v. Tatterson* (1986), W.Va., 352 S.E.2d 107.

Because of the ethical constraints imposed upon lawyers, all fees must be reasonable and not clearly excessive. To the extent that a lawyer and his client are free to contract for the lawyer's fees, that contract must meet the tests of reasonable and not clearly excessive. However, in this case, the majority opinion applies the reasonableness test and finds Belli's fee to be reasonable under the facts and circumstances of the case. With that assessment, I agree.

Except for my disagreement with the overbroad statement concerning the parties' freedom to contract for any amount of attorneys' fees, I concur in the majority opinion.