**Cora M. VAUGHN, et al., Plaintiffs,**

v.

**Scott KING, et al., Defendants.**

**No. 2:96–CV–84–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 20, 1997.

Eric O. Clark, Gary, IN, Bessie M. Taylor, Grimes and Taylor, Gary, IN, Gordon R. Cooper, II, Cooper and Cooper, Houston, TX, for Plaintiffs.

Monica S. Morris, Meyer Lyles and Godshalk, Gary, IN, for Defendants.

### ORDER

LOZANO, District Judge.

This matter is before the Court on Plaintiffs' Motion for Judgment As a Matter of Law Notwithstanding the Jury's Verdict Or in the Alternative Motion for New Trial on Damages filed on July 7, 1997, and Motion to Reconsider filed by Plaintiffs on August 8, 1997. The Plaintiffs also filed a Supplemental Memorandum of Law in Support of Their Motion for Judgment As a Matter of Law on July 11, 1997. For the reasons set forth below, Plaintiffs' Motion for Judgment As a Matter of Law Notwithstanding the Jury's Verdict Or in the Alternative Motion for New Trial on Damages is **DENIED**. The Motion to Reconsider is **DENIED** as **MOOT**.

### BACKGROUND

Plaintiffs had several contracts with Defendant, Gary Sanitary District ("GSD"), for the collection of GSD delinquent accounts. The contracts provided in part for attorney fees of 25% of the amounts collected. After Defendant, Scott King, became the new mayor of Gary, GSD terminated the collection contracts with the Plaintiffs. Plaintiffs sued for attorney fees due under those contracts. The complaint originally asked for $377,425 in attorney fees under the contracts. By the time of trial, the Plaintiffs were demanding over $1,000,000 in fees.

In its order of April 2, 1997, the Court denied both Plaintiffs' and Defendants' motions for summary judgment on the breach of contract claim. In the order the Court held that the contracts were valid despite the fact that the mayor of Gary had not signed the contracts. The Court also found there were genuine issues of fact regarding whether the amounts the Plaintiffs claimed they had collected had in fact been collected, and whether they had been collected through the Plaintiffs' efforts.

At trial, the Plaintiffs presented evidence of the amounts collected through their efforts. The Plaintiffs also argued that the collection contracts were never actually terminated and that therefore the contracts continued to rule the relationship between the parties.

In opposition, the Defendants argued that the contracts were invalid because of undue influence. The Defendants also claimed that the amounts were not collected by the Plaintiffs' efforts, that the Plaintiffs did not perform their part of the contract, and that the Plaintiffs were entitled only to hourly pay when they did not endeavor to collect the attorney fees directly from the delinquent users.

The jury returned a verdict for the Plaintiffs in the amount of $181,956.98. Because it was undisputed that the Plaintiffs had done at least some work for the Defendants, even a jury that believed the evidence and the arguments presented by the Defendants

would have had to make some award to the Plaintiffs.

*DISCUSSION*

 The Plaintiffs move for judgment as a matter of law or in the alternative for a new trial because the jury verdict was allegedly inadequate and against a great weight of the evidence. Under Federal Rule of Civil Procedure 50(b) the Court may grant judgment as a matter of law after a trial when there was not legally sufficient evidentiary basis for a reasonable jury to find as it did in the case. When considering a motion under Rule 50(b) the Court should consider the evidence in the light most favorable to the nonmoving party. *Pope v. Shafer,* 86 F.3d 90 (7th Cir.1996); *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 515 (7th Cir.1993). The Court should deny the motion if the evidence, when viewed in the light most favorable to the Defendants in this case, supports the verdict. *McNabola,* 10 F.3d at 515. When deciding a motion for a new trial under Federal Rule of Civil Procedure 59, the Court should consider whether the verdict is against the weight of the evidence, the damages excessive, or if for some other reason the trial was not fair to the moving party. *Id.* at 516.

The Court notes, before considering the Plaintiffs' arguments, that the jury had several alternatives in deciding a verdict in this case. First, the jury could decide if the contracts were invalid because of undue influence. If so, the Plaintiffs could not recover under the contracts and were entitled only to the reasonable value of their services. If the jury found that the contracts were valid, the jury then had to decide whether the Plaintiffs had performed their part of the contracts. If they had not, then again the Plaintiffs were only entitled to the reasonable value of their services. If the jury found that the Plaintiffs had performed their part of the contracts, the jury had to determine whether the contracts called for fees of 25% of all amounts collected through the Plaintiffs' efforts, or only 25% of the amounts

collected where the Plaintiffs endeavored to collect the attorney fees directly from the users. Finally, the jury had to determine if and when GSD terminated its contracts with the Plaintiffs because the Plaintiffs could recover under the contracts only for collections accomplished during the contractual relationship. For those completed afterwards, the Plaintiffs were only entitled to the reasonable value of their services.

 Because the parties agreed to a general verdict form, it is impossible to tell how the jury decided this case. If there is enough evidence to support a jury verdict on any one of these possible grounds, the Court will not grant the motion.

Plaintiffs advance several grounds in support of their Motion for Judgment as a Matter of Law. The Plaintiffs first argue that the evidence presented at trial shows that the collection contracts had not been terminated and were still ongoing at the time of trial. The Court disagrees. There was sufficient for the jury to find otherwise.

 The Plaintiffs next argue that the undisputed evidence showed that certain named collections occurred because of their efforts. Even assuming such evidence was undisputed, the jury could have decided as it did based on other evidence and theories of the case. The jury could have found that the Plaintiffs could not recover under the contracts because the contracts were obtained under undue influence.[1] Even if the jury found that the contracts were valid and that the collections occurred because of the efforts of the Plaintiffs, the jury could have found that the Plaintiffs had not endeavored to collect attorney fees from the users and were entitled only to payment for the hours expended. Considering the different theories of the case presented to the jury, the evidence as viewed in the light most favorable to the Defendants was sufficient to sustain the jury's verdict.

---

1. Under Indiana law, the Plaintiffs, as the attorneys for GSD, had the burden to prove that the contracts were not obtained under undue influence. *Lutz v. Belli,* 516 N.E.2d 95, 97 (Ind.Ct. App.1987); *Day v. Bicknell Minerals, Inc.,* 480

N.E.2d 567, 570–71 (Ind.Ct.App.1985). The Court allowed the questions of undue influence to go to the jury because there was enough evidence for a jury to conclude that the Plaintiffs used undue influence to obtain the contracts.

■ Throughout the motion, the Plaintiffs argue that because the contracts provided that the Plaintiffs were entitled to recover 25% of the amounts collected once they commenced collection efforts on that account, the fact that the collections occurred not because of the Plaintiffs' efforts, or that the collections occurred after the contracts were terminated, would not preclude them from recovering the 25% in fees. That might be permissible if the contracts were not contracts for legal services, but there are legal rules that limit the ability of a lawyer and her client to contract freely. Under Indiana law, an attorney is entitled only to reasonable fees regardless of the existence of a contract between her and her client. *Trinkle v. Leeney*, 650 N.E.2d 749, 754 (Ind.Ct.App.1995). This Court indicated that it would not find reasonable fees of 25% of collections that were not achieved through the Plaintiffs' efforts. Despite the Plaintiffs' argument to the contrary, having commenced collection was not enough to entitle them to 25% of the amounts collected. At the same time, the Court instructed the jury that Plaintiffs' efforts might have involved something as simple as writing a letter.

■ Also, under Indiana law when a client terminates a contingency fee contract with his attorney before the conclusion of the case, the attorney may not recover for her services under the contract but only on quantum merit. *Estate of Forrester v. Dawalt*, 562 N.E.2d 1315, 1316 (Ind.Ct.App.1990). The policy behind this doctrine is to prevent forcing a client to stay in an attorney-client relationship which the client wants to leave but does not because he fears owing a full contingency fee. In its order of April 2, the Court ruled that this doctrine does not apply to the case at hand where the Plaintiffs completed their services and successfully recovered fees. However, the holding of the Court applied only to successful and completed collections at the time of the termination of the contracts. The law limited the Plain-

tiffs' recovery to quantum merit in matters that had not concluded at the time GSD terminated the contracts.

■ The Plaintiffs advance other grounds in support of their motion in their supplemental memorandum. The Plaintiffs first argue that the Court erred when it let the jury interpret the contracts without finding that the contracts were ambiguous. The construction of a contract is a matter of law for the court, as long as the contract is not ambiguous. *Midwestern Indemnity Co. v. Leffler Constr. Co.*, 463 N.E.2d 1130, 1133 (Ind.Ct.App.1984). If a contract is unambiguous, it is an error for the court to leave the interpretation of the contract to the jury. When a contract is ambiguous, the intention of the parties is a question of fact, and reliance on extrinsic evidence is proper. *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 633 (Ind.Ct. App.1995). A contract is ambiguous if reasonable persons would find that the contract can be subjected to more than one construction. *Eckart v. Davis*, 631 N.E.2d 494, 497 (Ind.Ct.App.1994).

■ In this case the Court submitted to the jury two possible interpretations of the collection contracts. The Court instructed the jury that it had to decide whether the parties intended that the Plaintiffs would recover 25% on all collections or that the Plaintiffs would recover 25% on collections where the Plaintiffs collected the attorney fees from the users, but only per hour when they did not. *See* Jury Instruction SPINST. 003. The Court submitted the issue to the jury because the collection contracts were ambiguous in this regard. One provision of the contracts stated that GSD would be liable to the Plaintiffs for 25% of all delinquent accounts collected, but a separate provision stated that unless the attorney fee was collected directly from the debtor, the Plaintiffs would to submit itemized invoices for all billable hours.[2]

---

2. The relevant sections of the contracts read:

*ARTICLE III*
*COMPENSATION AND TERMS*
As compensation for the services outlined above, Contractor shall be entitled to an attor-

neys fee in the amount of twenty-five per[cent] of all delinquent fees, penalties, fines or other debts collected on behalf of GSD or as a result of Contractor's effort. Contractor shall endeavor to collect said attorney fees from the delinquent user or debtor.

While the Court submitted to the jury the question of the intent of the parties as to the billing arrangement, the Court did not submit to the jury the question of whether the contracts were ambiguous, as the trial court did erroneously in *U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*, 852 F.2d 313 (7th Cir.1988). None of the instructions asked the jury to determine whether the contracts were ambiguous. The Court had to make that determination prior to instructing the jury as it did.

█ The Plaintiffs argue that the contracts were not ambiguous and that both parties so agreed. Each party, however, argued that the contract had a different meaning. The fact that both sides argued that the contracts were unambiguous, or that the parties disagreed as to the meaning of the contracts, is not determinative of whether the contracts were ambiguous. *See Pitcher v. Principal Mut. Life Ins. Co.*, 870 F.Supp. 903, 907 n. 1 (S.D.Ind.1994), *aff'd*, 93 F.3d 407 (7th Cir.1996).

█ The Plaintiffs also argue in the supplemental memorandum that in the April 2 order the Court interpreted the contracts as providing that the Plaintiffs were entitled to 25% of all collections which were the result of the Plaintiffs' efforts and that the only issues remaining for trial were what amounts had actually been collected for GSD and whether they were due to the Plaintiffs' efforts. The Plaintiffs misinterpreted the order of the Court. Those two issues prevented the entry of summary judgment, but at no point the Court stated that they were the only issues remaining for trial.

In holding that the contracts were valid in the order on summary judgment, the Court considered the argument of the Defendants that the contracts were invalid because they lacked the mayor's signature. In deciding that the contracts were valid, the Court decided that they did not need to carry the mayor's signature to be enforceable.

At trial, Defendants presented different arguments attacking the validity of the contracts and the right of the Plaintiffs to recover under the contracts. The Defendants argued that the contracts were invalid because of undue influence. That question was not presented to the Court in the summary judgment motions and the Defendants were entitled to present this argument to the jury. Neither was before the Court in the motions for summary judgment the argument that the contract provided for two different forms of billing. Nothing in the summary judgment order precluded the Defendants from presenting issues at trial that the Court had not decided in the April 2 order.

Because the Court finds that the Plaintiffs did not meet the standards required under Federal Rules of Civil Procedure 50(b) and 59, the Court denies the motion for judgment as a matter of law or for a new trial.

On August 5, 1997, the Court granted Defendants' motion to stay execution of judgment pending a decision on Plaintiffs' motion for judgment as a matter of law.[3] The Plaintiffs filed a motion to reconsider on August 8, 1997. Because hereby the Court decides Plaintiffs' motion for judgment as a matter of law, the motion to reconsider is moot. The stay of execution is now lifted.

*CONCLUSION*

For the foregoing reasons, Plaintiffs' Motion for Judgment As a Matter of Law Notwithstanding the Jury's Verdict Or in the Alternative Motion for New Trial on Damages is **DENIED**. The Motion to Reconsider is **DENIED** as **MOOT**. Now that the Court has decided the motion for judgment as a

---

GSD specifically agrees that once collection has commenced on an action, GSD is liable to the attorney for twenty-five per cent [sic] of all delinquent fees collected from said user or debtor whether the collection is through judgment, settlement agreement or voluntary payment.

*ARTICLE IV*
*METHOD OF PAYMENT*

Unless the attorneys fee is collected directly from the debtor, the CONTRACTOR agrees to submit itemized invoices for all billable hours. Said invoices shall be paid on a monthly basis.

**3.** The Court granted Defendants' motion to stay in part on the belief that the Plaintiffs had not opposed the motion. The Plaintiffs did file a response on August 4, 1997.

matter of law, the stay of execution ordered on August 5, 1997, is no longer valid.